# EXHIBIT C

Fannie Mae Hearing Transcript - 2.13.09

1

92cegenc
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x

IN RE FANNIE MAE MATTERS,

08 CV 7831(GEL)
and related cases
-------------------------------x

February 13, 2009
11:34 a.m.

Before:

HON. GERARD E. LYNCH,

District Judge

APPEARANCES

GOLD BENNETT CERA & SIDENER, LLP
     Attorneys for Plaintiff Movant Horizon Asset Management
BY:  SOLOMON B. CERA

FEDERMAN & SHERWOOD
     Attorneys for Plaintiff Williams
BY:  WILLIAM B. FEDERMAN

KAPLAN FOX
     Attorneys for Plaintiff TCRS
BY:  FREDERIC S. FOX
     DONALD R. HALL

STULL, STULL & BRODY
     Attorneys for Plaintiff
BY:  JULES BRODY

LABATON SUCHAROW
     Attorneys for Plaintiff Massachusetts
BY:  CHRISTOPHER J. KELLER

LATHAM & WATKINS
     Attorneys for Fannie Mae
BY:  JAMES BRANDT

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

2

92cegenc
          A P P E A R A N C E S (continued)


BERNSTEIN LITOWITZ BERGER & GROSSMANN, LLP
     Attorneys for Alameda County
BY:  NOAM MANDEL

SIMPSON THACHER & BARTLETT, LLP
     Attorneys for Underwriter Defendants
BY:  GEORGE S. WANG

Fannie Mae Hearing Transcript - 2.13.09

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

3

92cegenc

(In open court)

THE DEPUTY CLERK: In Re Fannie Mae Matters.

THE COURT: Good morning, everyone.

We're here for an initial conference in this matter, which I gather is now officially a multidistrict litigation case, thanks to the filing of some additional actions outside this district. I don't know if people are aware of this, there's an annual conference in Palm Beach for judges who have multidistrict litigation. So I'm always grateful when I've got a case anyway and it's got dozens of related cases and gets no more complicated if somebody files one in Chicago or Los Angeles or New Jersey, but once somebody does, there are perks for the judge involved. So thanks to those folks.

The principal order of business here today is to appoint lead plaintiffs in the case. Now, normally this is not a terribly complicated matter. I'm a great believer in two principles that I think underlie the PSLRA that usually simplify the choice of lead plaintiffs. One is that we generally want to appoint the plaintiff with the largest losses, which tends to make it a somewhat mechanical process; and two is that other things being equal, we want to appoint lead plaintiffs who are institutional investors, or at least people who have some significant resources and time and legal expertise to devote to the case. I also incline to prefer to appoint, if possible, a single lead plaintiff, rather than a

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4

92cegenc

group. But that's not inflexible, and I'm prepared to appoint a group if a group otherwise appears most suitable. I'm even prepared under appropriate circumstances to put movants together, if they're willing to work together and sort of cobble a group, if I think that is otherwise appropriate.

Now, in this case, perhaps because of the magnitude of the losses and of the number of claimants, there are a number of competing applicants who are plausible candidates, even within this apparently objective framework. And as is often the case, the question of how you calculate the losses or if in what way different individuals or groups have suffered the losses make it less simple than it might appear, and the consequence here is I'm not sure it's possible to resolve the appointment issues simply by doing some arithmetic and then appointing whoever comes up with the highest number.

Now I've reviewed all the applications here and the

Case 1:05-cv-00695-PO-SLC Document 59-18 Filed 09/26/09 Page 4 of 18

Fannie Mae Hearing Transcript - 2.13.09

various oppositions and contending statements that folks have made, and I'm grateful for the answer and for the quality of many of those presentations, and I'm prepared to make an appointment. In a way I'm going to address this by kind of process of elimination, which is sort of how I thought about it.

First, there is an argument advanced by the Milberg firm on behalf of I guess it's the strong group of contenders for lead plaintiff that in effect argues that I ought to split

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5

92cegenc

up the claims here and allow separate actions to proceed against separate underwriters based on different types of claims, some of which sound in strict liability and others in fraud, and some of which would be divided according to the specific securities that were purchased.

There are two principal ideas that I take it underlie this argument or this application. One is that some strict liability claims could hypothetically proceed relatively rapidly. The second is that a lead plaintiff, which does not itself have claims against particular underwriters or claims regarding particular securities, will not be as sufficiently vigorous in proceeding against those underwriters.

Neither argument is persuasive to me. I'm certainly intrigued by what seems to me to be an innovative approach, and I've given careful consideration to the possibility that this recommendation, which I think is somewhat unconventional, might be as successful in moving certain parts of the case along faster. Nevertheless, the practice or tradition in these matters appears to be to the contrary. In every case I have handled, and in virtually all of the cases of which I'm aware, there has been a single lead plaintiff or group which pursues the claims against all possible defendants who have wronged the class based on all possible theories.

Now, tradition or precedent alone is not a reason to presume that that's the best way to proceed, but there is some

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

92cegenc

force to following a road that's been laid out in prior cases, especially when that road has proven successful. And the principal reason why I reject the approach suggested by the strong group is that the traditional road has proven successful in handling major securities fraud cases. It has certainly not been my experience, quite the contrary, that lead plaintiffs have failed to pursue vigorously claims against all possible defendants, regardless of whether the individual lead plaintiff has those particular classes of securities or has a claim against a particular underwriter or a particular defendant.

In all of the cases I've handled or reviewed in researching this issue, it appears that the lead plaintiffs have had no trouble tracking down everybody against whom plausible claims have to be made, and many other defendants besides, and pursuing those claims very vigorously, nor do I see a reason to separate out those cases or complaints in which at least some plaintiffs want to proceed primarily on strict liability grounds. I don't think there's any conflict of interest among parties who all want to establish liability where there are multiple different grounds of liability that might apply to different defendants. I don't see any reason why suitable lead plaintiff would not want to proceed vigorously on any strict liability claims that can be made and can nail down those claims quickly while proceeding on whatever other theories can be brought against other parties.

Case 1:09-cv-00593-PGG-JLC Document 59-15 Filed 09/28/09 Page 5 of 18

Fannie Mae Hearing Transcript - 2.13.09
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7

92cegenc

In terms of the actual administration of doing those multiple agendas, I recognize that if money is gathered in in various settlements against particular defendants, it may take longer for parties -- for class members to get distributions if there is one big class and one big pot than if some plaintiffs were allowed to proceed separately.

But first of all, I don't think this is inevitable. If there are specific claims against specific defendants that inure to the benefit of only some members of certain subclasses, there's no reason why a distribution of such amounts cannot proceed whenever it's appropriate. On the other hand, to the extent that some claims could result in recoveries against parties who may be liable to different subclasses on different theories, first, those defendants are unlikely in the first place to settle a claim against only some plaintiffs and leave themselves exposed to other claims; and second, if they did do that and then were not solvent enough to pay off other claims, it seems to me that the cause of justice due all injured parties would not be served by allowing some people to make a quick strike and get whatever money there is to be gotten and leaving those with more complicated claims out in the cold. So I don't think that's a good solution, and I believe we should appoint a lead plaintiff or plaintiffs who have the most comprehensive possible representation.

On the other hand, I am persuaded that in this case it

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8

92cegenc

may not be desirable to have a single lead plaintiff because there may be substantive conflicts of interest among those comprising the largest hypothetical class. The biggest source of conflict seems to me to be between the holders of common and preferred shares. I do not think it's possible for a lead plaintiff that has primarily suffered losses on preferred stock to fairly represent the interest of common shareholders largely for the reasons thoughtfully laid out in Professor Green's declaration.

Now, the reverse may not be true. It may be possible to have a single lead plaintiff with primarily losses in common stock, but I'm inclined to think that it would be helpful in the circumstances of this case to have separate lead plaintiffs to represent the interests of common and preferred shareholders.

The next issue I want to address is the position of Horizon, one of the movants, which strikes me as somewhat peculiar. I agree with the overwhelming weight of authority in this and other districts holding that an investment adviser ordinarily does not have standing to bring claims on behalf of its clients. Now, I recognize that Horizon has some losses that it does have standing to raise, either because it has received assignments or because it has its own independent losses personal to it, but nevertheless, I don't think it's appropriate simply to say that because Horizon can bring some

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9

92cegenc

claims in its own right, that it should get credit for its being a party to the largest losses by aggregating claims it does not have standing to bring with those that it does have standing to bring. And if only the latter are taken into account, Horizon becomes not the largest stake holder, as it

Fannie Mae Hearing Transcript - 2.13.09

claims to be, if it were given credit for all of its clients' losses; it would be by a large measure the largest stake holder.

But if it only is credited with those losses that have standing to represent, then it becomes simply one of a number of contenders with losses in the 10 to 20 million dollar range. I don't think it has established that it is a suitable lead plaintiff in view of the doubts about its right to bring all of the claims that it has presented to the Court.

I was next going to address the application of the so-called institutional investor group, the one that includes the North Carolina plaintiffs, but I understand that that application has been withdrawn.

So this, a process of elimination, seems to leave me with only a few significant contenders. The Tennessee retirement system has extremely large losses which dwarf those of any other movant who represents the interest of preferred shareholders. Although TCRS has losses in both common and preferred shares, the vast preponderance of its losses are in preferred shares. And since as I've already indicated I think

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

10

92cegenc

the interest of preferred and common shareholders need to be separated, I will appoint TCRS as the lead plaintiff representing preferred shareholders.

With respect to common shareholders, although there are several contenders in the same ballpark, the largest losses were suffered by the Massachusetts public fund. I've carefully considered the argument this litigant is too overburdened by serving as the lead plaintiff in other actions, but on balance I think this is a sword that cuts both ways. It does tend to show that this institutional investor has developed some expertise in this area and has been trusted by other courts as the lead plaintiff. And that weighs against the notion of excessive burden.

I also don't think the burden is so excessive. After all, it is the counsel hired by lead plaintiff, rather than the lead plaintiff itself, that will do the principal litigation leg work. What the client has to do is to evaluate the various options presented by the lawyers and come to understand the litigation. I don't think it's impossible to do this for a number of different cases. Accordingly, the Court will grant the motion to consolidate the various cases pending before me, appoint the Tennessee consolidated retirement system as the lead plaintiff representing preferred shareholders and the Massachusetts public pension funds as the lead plaintiff representing the common shareholders.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

11

92cegenc

A couple of other issues first. I'm generally inclined to approve the selection of lead counsel by these two plaintiffs, with a couple of caveats. And I'm certainly familiar with the law of both Kaplan Fox and the Labaton firm, and I think these are suitably experienced and substantial firms and are appropriately retained. I have a hesitation always about appointing colead counsel. I think it's good to have one lead captain of a ship as much as possible. But I think that is ultimately a choice for the lead plaintiff.

And while I would suggest that it might be desirable to have one lead law firm, of course I assume that that law firm in each case is likely to enlist others to assist it, and I'm not completely wedded to the idea of just having one law firm as lead counsel. I think lead plaintiff should just

Fannie Mae Hearing Transcript - 2.13.09

consider that and let me know what its decision is.

But there is one other issue. I don't think that any of the applicants -- and I'm pretty sure that neither of the successful applicants said anything in its papers about any fee arrangements or negotiations that had taken place. Now, of course, I realize that if there is going to be any recovery in this litigation, it will be up to me to make an award of attorneys fees. On the other hand, in doing so, I have often been favorably influenced by agreements that have been made by lead plaintiffs up front that the lead plaintiffs regard as appropriate negotiated fees. And certainly if there have been

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

12

92cegenc

any such negotiations, it seems to me that it is more than desirable that any such agreements be disclosed to the Court.

So while I will appoint the Kaplan Fox and Labaton firms as lead counsel, that is at least to some extent provisional. And in the two respects I've mentioned, number one, TCRS will tell me if they really think it's a good idea to have colead counsel. I'm prepared to defer to it, but I've stated my preference for a single lead law firm.

And then secondly, I would like to receive within a couple of weeks first a disclosure of any negotiated agreements that exist between the lead plaintiffs and these firms that are representing them. And if none have been made, I'd like the parties to at least consider whether it's appropriate to reach some tentative agreement as between the plaintiffs and counsel on what they think up front might be an appropriate way of approaching fees, if there are recoveries.

Okay. The next thing on my agenda is to set up a schedule.

MR. BRODY: Jules Brody, Stull, Stull & Brody. I have with me in the courtroom Mr. Kraut, who's cocounsel in the case, and also I have Mr. Marx, who's chairman of the board of the Berkshire bank corporation, is one of the movants together with two other directors of the bank. So they are truly institutional clients. The bank itself, it's a matter of public record, suffered substantial losses. And I know your

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

13

92cegenc

Honor has rejected this point, but the fact that the institution that your Honor selected for the preferred has a type of shares, and in our view and Mr. Marx's view -- and if your Honor would like him to address the point, it's -- it can't in this situation where there's $7 billion on the issue that they were involved with, to have counsel -- they have -- represent an institution has common shares also, is an inherent conflict. And let me further elaborate.

THE COURT: No. Look, I've read all the papers. I've thought about it. In the case of Tennessee, we're talking about some 60-odd million dollars of losses in preferred shares. That's an enormous amount of money, far more than any other preferred shareholders. The common shares losses are $3 million, which is something like that.

MR. FOX: Yes, on a LIFO basis.

THE COURT: It just seems to me that it's not realistic to think that this is going to make that plaintiff be in a position of conflict or be disloyal to getting the largest possible recovery for the preferred shareholders. And it's a hypothetical position. To say there is some kind of conflict but to say that that's a real conflict would in effect say that this organization, this institution is incapable of representing its own interests because it has some little tail,

Fannie Mae Hearing Transcript - 2.13.09

you know, wagging in some other direction.

MR. BRODY:  Can I just address this in 60 seconds or

14

92cegenc

less?

THE COURT:  No, it's done.  I've been there.  I've read it.  I've understood it.  I may be wrong.  There are folks upstairs who deal with me when I'm wrong.  I don't need to hear more about it at this point, especially because I guess what I should have said to the people that are appointed is the good news is you're lead plaintiffs.  The bad news is you may be lead plaintiffs in a securities action where the securities are exempt from regulation under the securities laws.

So I think we want to get to the substance quickly.  And certainly anybody who's got any information at all in the matter is free to submit amicus briefs or otherwise play some role in addressing this issue.  But I want to get to moving the case along promptly, and here's what I'm thinking in that regard.

MR. CERA:  Your Honor, may I be heard briefly on one point the Court has already addressed.

THE COURT:  Who are you, so that the court reporter knows?

MR. CERA:  Solomon Cera, your Honor, on behalf of Horizon Asset Management.

Your Honor, with respect to the lead plaintiff matter and the common stock purchases, the PSLRA statute has clear -- the language appears to be mandatory about the largest financial interests.

15

92cegenc

With respect to the common, your Honor, as the Court is aware, a new decision came down from the Second Circuit after we filed our pleadings in this matter.  And I've represented investment advisers in other security fraud class actions that have been appointed, but new law was established by the Second Circuit after our briefs were submitted, and we went out and obtained assignments immediately from those who were affiliated directly with Horizon.  And, your Honor, those assignments reflect a loss of $10.4 million in the common stock.

THE COURT:  Right.  I'm aware of that.  But the other folks had -- tell me who is here from the Labaton firm.

MR. CERA:  Your Honor, their losses are 3.8 million.  The Massachusetts private investment pension management board loss is significantly less than Horizon's, as is the Boston retirement plan's loss on the common stock.  And, therefore, your Honor, under the mandatory language of the PSLRA, my client, Horizon, should be appointed as lead plaintiff for the common stock, because they have clearly the largest financial interest in the common stock losses.

THE COURT:  Who's here on behalf of Massachusetts?

MR. KELLER:  Your Honor, Chris Keller on behalf of Massachusetts.  Boston and Massachusetts together suffered a $12 million loss on the common stock.

THE COURT:  That's what I thought.

16

92cegenc

MR. CERA:  Your Honor, that's not what I drew from the submissions.  And of course, this does come down to the issue of LIFO, FIFO and the detail that's been presented.

Fannie Mae Hearing Transcript - 2.13.09

I would like an opportunity, your Honor, to demonstrate to the Court that, in fact, under the statute, under the largest financial interest, the assignments that Horizon has are the largest.

THE COURT: No, you've had your opportunity. You've had your opportunity. I've ruled. We're done.

Now let's get on to the business of whether there's any lawsuit here at all. There was what to me was a very persuasive brief filed and a motion to dismiss filed very early on in this matter by various defendants to the effect that these securities are simply exempt from any of the regulations that are the basis of the claims that have been brought by the various plaintiffs. And there was a response filed I guess by the strong group, by the Milberg firm, to that. And I read those briefs.

And I think it seemed to me that it was appropriate to defer ruling on any such application until we decided who the lead plaintiffs were and until we gave everybody an opportunity to respond who wanted to respond, not just the people who were plaintiffs in the particular cases that the moving defendants addressed.

On the other hand, it is not clear to me how we ought

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

17

92cegenc

to structure this. The conventional thing to do in most cases at this point would be to say the lead plaintiffs. And I'm guessing that the lead common and preferred plaintiffs are likely at this stage to have a common front and want to file a single consolidated amended complaint, should be given time to do what they're going to do and then have the defendants respond to that complaint.

Now, in this situation, I think there is an elephant in the room. There's a very large obstacle to recovery that defendants have already raised that, as far as I can see, but I'm not all that creative, would apply to all of the claims, federal claims that I can imagine plaintiffs bringing.

So what I'd like to know from the lead plaintiffs, and I'll certainly hear from anybody else who's on the plaintiff's side of the table who has ideas, is I could think of a variety of ways of doing this. One is to go down the conventional route, give the plaintiffs time to come up with a consolidated amended complaint and then have the defendants respond to that. But I guess I'd want to hear -- I don't want the defendants to be expending resources, coming up with 30 different grounds for motions to dismiss and spending a huge amount of money on giant briefs. If they think they have got one rifle shot winner, I'd like to have that issue addressed first.

The second way to do it would be just to address that issue and give the -- it's already been made, as far as I can

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

18

92cegenc

see by the defendants, and have the plaintiffs, lead plaintiffs now see if they have anything additional to say that isn't in the briefs that the Milberg firm already filed, including to give me some preview, and if a consolidated amended complaint they anticipate would say something that's different or would have other causes of action to which those objections aren't addressed.

So there are a lot of ways of thinking about this, but I do want to put the plaintiffs on notice that I did find that argument at least prima facie persuasive, and that if it is ultimately persuasive, it seems to me that it would have a very substantial impact on this litigation, whether or not it

Fannie Mae Hearing Transcript - 2.13.09

totally wipes out claims, all claims that the plaintiffs want to make.

So who's going to speak to that?

MR. FOX: Good morning, your honor. Frederic Fox, Kaplan Fox, on behalf of the Tennessee Consolidator Retirement System. I'd like to introduce to the court, with me is Mr. Joe Shirley from the Attorney General of Tennessee's office.

MR. SHIRLEY: Good morning, your honor.

THE COURT: Mr. Shirley.

MR. FOX: I would say that I suppose speaking a little bit for Mr. Keller here, I think we would like the opportunity to file a consolidated amended complaint, because I think that things that we say and how that complaint is pleaded would make

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

19

92cegenc

a difference.

Another matter is that the motion to dismiss that was filed by defendants only sought to dismiss Section -- I believe Section 12.2 claims. I don't believe it dealt at all with Section 10(b) and Rule 10b-5 claims and other claims that have been advanced. So I think it would be a better procedure and would not cause too much undue delay or undue burden on defendants if we followed what is normally the procedure in these types of cases of allowing us to file a consolidated amended complaint and then taking it from there. I mean, that's what I would propose.

THE COURT: Mr. Keller?

MR. KELLER: I have nothing to add. I agree with what Mr. Fox has.

MR. BRODY: Judge, can I have 30 seconds? This is the very point. The consolidated amended complaint 33 act, 34 act, there's prejudice to the preferred, because that should be determined quickly and early. It's already briefed, and that should be done separately so our clients, particularly the people at the Berkshire bank and Berkshire movants and other banks that have been in touch with the Berkshire people, that should be -- it's going to take too long, and then they'll come up with the argument of, well, the claims sound in fraud. Your Honor's well familiar with that. They shouldn't be mixed up.

I'm not going to the point now of separate

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

20

92cegenc

representation, but the issue of whether there's a 33 act claim should be decided pronto, immediately. If there's additional briefing, the Milberg firm has done terrific work. And if there are any other arguments, let these eminent lead counsel you've appointed buttress the arguments and let's move on. Otherwise, it's a year, year and a half until we get this amended complaint. There will be a motion to dismiss, reply brief, etc., etc. Your Honor knows that from experience.

It's not fair to our clients, whoever simply preferred shares in an issue that came out in late -- very late, and there was no proper disclosure. It's not fair to the Berkshire bank. It's a major bank in the City of New York. These people Mr. Marx --

THE COURT: Let me hear from the defendants for a minute. Who's got this -- who's going to take the lead on this?

MR. BRANDT: James Brandt, your Honor, of Latham & Watkins on behalf of Fannie Mae.

Your Honor, we made the motion to dismiss coming out of the blocks because a number of the cases were 33 act cases only. And the argument that we made is, you know, we think

Fannie Mae Hearing Transcript - 2.13.09

prohibitive. You know, frankly, there were a number of defendants named only in 33 act cases. And our hope was that some of the cases would just go away and some of the defendants, you know, would never appear; really a primary goal

92cegenc

being of streamlining the cases here.

I would note I think, and my colleague, Jeff Hammil, just pointed out to me that we move to dismiss the Berkshire case.

THE COURT: Well, that's what I'm puzzled about.

MR. BRANDT: Which I don't think they responded.

THE COURT: Mr. Brody is making the argument I should get his clients dismissed out of the case really fast, it's going to be unfair to his clients to delay their losing until the other people come up with their arguments for why they still have good claims, which, you know, may be right enough, I guess.

MR. BRANDT: So our effort, your Honor, was really only to try and assist in cleaning up a little bit so that we could focus, if there were any remaining issues, on what the remaining issues were.

And I want to restate, I think, on behalf of the Berkshire bank case, there was no reply at all to our motion to dismiss. So I think they're already in default position.

MR. BRODY: That's not correct, okay. Period. End of story. Our case will never -- there's no default. I went through this with you, counsel. I was ready to sign the stipulation when the case in New Jersey was filed. No one told me -- I said either get the Jersey case to New York or go MDL, and that's -- we went back and forth on telephone calls and

92cegenc

etc. And you never moved. You should have done an MDL right away. I said I'll give you the MDL papers. Just get the Jersey --

THE COURT: I'm generally more comfortable with less excitable --

MR. BRODY: I'm sorry, your Honor, but that's an incorrect statement. We did not reply to the brief, and I had to explain why.

THE COURT: It doesn't matter. I'm not defaulting anybody. I'm trying to get an orderly process for addressing these various issues.

Now, Mr. Brandt?

MR. BRANDT: What I was going to say is either way we go, whether we do it by leaving the current motion in place and just provoking answers, which I think would be a perfectly efficient way to go, since our argument really doesn't turn on anything anybody can say about the Fannie securities or pleading facts or what other defendants they lay in, it's sort of a status thing about the actual stock itself, whether it's preferred or common stock. It would make the consolidated amended complaint that much cleaner and make the motion that much cleaner. So either way --

THE COURT: That's sort of what -- I find that fairly persuasive. It may be that there's something that counsel can come up with for the plaintiffs that would change the way in

92cegenc

which this issue appears. I don't mean -- I mean, by both --

Fannie Mae Hearing Transcript - 2.13.09

you know, maybe you'll have better arguments or good things to say. I want to give the plaintiffs the fullest opportunity to respond to these motions. I haven't predetermined it. I've said only that I think it's got some persuasive force.

But I also mean it is possible, hypothetically, I don't know, that you would be able to frame the complaint or come up with facts that would, despite what Mr. Brandt says, change the way this issue appears. On the other hand, I think there is some force to the idea that we've got this argument presented and we can proceed on two tracks. I don't want to delay the case or slow it down. I want to speed it up.

It seems to me that it might well make sense for lead plaintiffs to have a say in response to the arguments that have been presented by defendants with respect to the exemption of these securities, make clear what it applies to and what it doesn't apply to in your view, make clear if there are any facts that you anticipate you'll be pleading that could change the way in which that issue looks or make it not what Mr. Brandt says it is, which is just a categorical abstract claim, and explain to me why they're wrong on the face of it. And if they're not necessarily wrong on the face of it, why they might turn out to look broader after you've had a chance to elaborate the claims.

But I think that if we proceeded to deal with that

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

24

92cegenc

issue promptly, it would lead to the possibility of expending less time on the consolidated amended complaint front on claims that might not survive. And then we'll -- you know, if you continue to work on that complaint. But we can get that issue teed up and find out whether we're going ahead on those fronts or not.

Mr. Fox?

MR. FOX: Your Honor, and we don't have any issue or problem with moving promptly, but I do think that it is a matter of how the complaint is pleaded; because one thing that we've noticed in these offering circulars is that they're all not the same. And in certain of them -- for example, Fannie says it is acting as an instrumentality of the government. In certain other ones, particularly ones that are at issue in this litigation, it appears to us that those offering circulars expressly say that Fannie is not acting as an instrumentality of the government.

So I think it does matter what the complaint says about the offering circulars. And I'm concerned that if we're -- if we just are in the position of responding to a brief that we haven't adequately preserved what I think would be our best argument or facts in a proper pleading that's before the Court, should there be appeals or things of that nature.

THE COURT: I thought -- of course, this is a little

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

25

92cegenc

premature. This isn't the place where anyone's expecting to argue the merits of this, but I'm just trying to get a handle on it. I rather thought that the defendants' best argument was not about any representation that was made or even about whether in a particular offering Fannie Mae was acting as an instrumentality but was the simple argument that Fannie Mae securities are expressly declared to be exempt. And I would have thought that whatever the merits of that argument, it's an argument that's independent of what they say; that if they said these are not exempt securities right there on the face of

Fannie Mae Hearing Transcript - 2.13.09

the -- don't worry about that, that might raise a fraud claim. But that doesn't change whether they are or aren't exempt. They can't make themselves unexempt if Congress has made them exempt, I would have thought.

MR. FOX: Except if they're not acting within the scope of what the exemption calls for. If the exemption is only if they're acting as an instrumentality of the government or there's a government guarantee of the securities, then the argument is the exemption simply doesn't apply.

THE COURT: All right. Well, here's what I think, with all respect to Mr. Brody's desire to get this wrapped up fast. Defendants usually don't have a big interest. They usually don't mind a little delay in this. And if the plaintiffs have -- the lead plaintiffs have theories or arguments that they think are better presented in the context

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

26

92cegenc

of a slower, more thoughtful presentation, then I'm happy to give them that opportunity, I guess, if that's the position that the plaintiffs want to take. And once the complaint is out there, then I think that various defendants might choose to have different kinds of responses and move with different issues on different tracks. And we can address things a little bit separately.

I would be inclined to want to address this issue very early on. And to the extent that it obviates other issues for at least some defendants or with respect to at least some claims, I think it's a strong enough argument with a likely enough chance of success that I would want to spare any defendant who's going to be relying on that argument the burden of making a dozen alternative arguments.

I think I want to make clear that those defendants who are relying exclusively -- primarily on that, or to whom that argument applies that would take them out of the case or make it unnecessary to respond to anything else, I don't think I need to hear their 12 backup arguments until I've decided whether this one works. If it does, so much the better for those defendants. If it doesn't, well, then we've lost some time, and that's unfortunate. And they'll have another round of briefing to raise whatever other arguments they've got.

Meanwhile, those defendants who are not in a position to rely on those arguments with respect to other claims that

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

27

92cegenc

are made by the plaintiffs can make whatever they've -- objections they've got to the consolidated amended complaint.

Now, Mr. Fox, what are you roughly proposing? I think what I'm going to do ultimately is send the parties home to negotiate with each other as to coming up with a concrete schedule. But I'd like to know what we're in for, because I'd like it not to be what Mr. Brody is afraid of. I don't see why this is going to be a ten-year plan. Let's see how fast we can get these things done.

So what are you thinking ballpark?

MR. FOX: Ballpark, I'd want to confer with Mr. Keller, but approximately 30 to 45 days.

MR. KELLER: On the amended complaint.

THE COURT: That seems not at all unreasonable. Then, Mr. Brandt, again, I'm happy to save you guys money. I think in the interest of not having myself appear to be terribly dilatory by sitting on your existing motions, I'm going to deem the existing motions withdrawn, and you'll then respond to the consolidated amended complaint. But you're certainly free to

Fannie Mae Hearing Transcript - 2.13.09

do so by simply reinstating your previous papers with whatever supplementation you think is appropriate, in light of anything that's said in the consolidated amended complaint.

So if that's done, then at least the exemption issue could presumably be teed up rather quickly. I don't know what "rather quickly" means, but rather quickly.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

28

92cegenc

MR. BRANDT: And, your Honor, can I just ask, my suggestion would be, of course, we haven't seen any consolidated amended complaint, but we've seen a lot of complaints in the matter. And my suggestion would be that what we do is agree on some form of schedule, obviously consensually, to the motion to dismiss at two levels. And first we could move with respect to the Section 12 claims, and then if we need to after, move with respect to the entire matter, because -- or else, you know, we're going to end up in a situation, if we do it all simultaneously, if everybody has to move at the same time, we are going to end up spending, you know, a lot of effort developing additional claims like on scienter grounds with respect to defendants I think that may really be excluded altogether if the Section 12 cases go away.

THE COURT: Well, again, I don't want to do -- to the extent that there are defendants who will get out of the case altogether, if the exemption claim is successful, I don't want those people to be briefing anything else. There are other folks, though, to whom apparently those arguments are not going to apply. And I don't know why they should hold up in making whatever response they want to make to the consolidated amended complaint.

And, of course, you'll have the opportunity to weigh in -- I guess -- are you thinking that you'll do a better job and you'll want to weigh in at the very beginning and not let

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

29

92cegenc

somebody else take the laboring war on that? See what I'm saying?

MR. BRANDT: We'll it's self-centered, but maybe. But why don't we go according to the plan that your Honor expressed, and we'll just do it all at the same time, except carve out for some -- I think on a practical level, it's going to end up on account of that schedule we're really just going to do it all at the same time, because there's a lot of crossover as to representation. So I think we're going to end up doing most of it at the same time on a practical matter --

THE COURT: I guess -- what I'm concerned about is if there are arguments that function only as backups to the exemption argument, I'll give you another opportunity to raise those later. You don't need to raise those. If, for example, there's a scienter argument that has to be made in response to claims to which the exemption argument does not apply, well, they're going to have to be made anyway. And they're not just backups. They're because these are claims that are going to proceed regardless of whether you succeed on the exemption.

So maybe it doesn't lead to saving any time, I don't know. And if it doesn't, that's all the more reason why I shouldn't do the exemption thing today; because if you're going to have to address these arguments anyway with response to the 10b-5 claims or something else, you know, so you're going to still have to do it. So let's just --

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

30

Fannie Mae Hearing Transcript - 2.13.09

92cegenc

MR. BRANDT: We'll go ahead.

MR. WANG: Your Honor, George Wang of Simpson Thacher for the underwriter defendants.

One possibility that might reconcile and harmonize competing interests is perhaps to have the motions dismissed; deemed withdrawn, as you suggested, your Honor, but to have those deemed remade, say, 14 days prior to whenever the consolidated amended complaint is due, such that contemporaneous with filing the consolidated amended complaint we would get an opposition to the motion to dismiss that has already been filed on the 12a-2 issue. That would allow for more expedited treatment of the motion to dismiss on that narrow issue and would alleviate plaintiffs' concern that they won't know until they file the consolidated amended complaint the details of their opposition.

THE COURT: I hear that, but it sounds a little too fancy in at least the following regard. Mr. Fox thinks apparently that he's going to be able to position this in a way such that you guys are going to want to say something more, that he's going to put something into his complaint and then presumably, if we followed your suggestion into his response to the motions, that would go beyond whatever you've already said.

So I think we can move this pretty quickly, because I think I want this to proceed in such a way that -- not necessarily simultaneously with the filing of the complaint,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

31

92cegenc

but soon thereafter these issues can be rejoined. I think the way to do that best is just to say that the defendants will have the option immediately, if they choose to reassert their previous motions. And if they can in two days or two weeks put in a supplemental brief on those issues, we can get that charging right ahead and let the other issues take the stately course that such issues tend to take.

MR. CERA: Your Honor, Solomon Cera again for Horizon.

If I may just be heard for one moment to correct the record, because I've been mining the record on this lead plaintiff issue. And a statement was made to the Court with respect to the size of the loss of the common stock for the Massachusetts pension reserves investment management board. And I've been looking at the declaration of Alan Ellman, document 24 on the docket filed November 7, 2008, and my reading of that document is quite clear, your Honor, that the aggregate common and preferred losses of Massachusetts were $12.7 million, of which amount 3.8 million was the common. So when they stand up and they say, we've had a $12 million loss, they're aggregating their common and preferred losses.

The way I'm reading this, your Honor, it's page 7 of 8 of Exhibit B. And if that be the case, and I believe the documents show that, Horizon unquestionably has the larger common stock loss and is required to be appointed under the PSLRA because it has the largest financial interest.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

32

92cegenc

MR. KELLER: Your Honor, if I may. What he's not recognizing is that Massachusetts, the PRIM fund moved together with Boston, their combined stock loss is $12 million.

THE COURT: This is what my understanding was.

MR. KELLER: Recognizing only the PRIM board, which the PRIM board has itself a stock loss of $6.7 million, the Boston common retirement system has a loss of $5.4 million, for a combined loss of $12 million worth of stock. So he's

Fannie Mae Hearing Transcript - 2.13.09

incorrect.

MR. CERA: Your Honor --

THE COURT: Do I also have the Alameda County folks here. Mr. Mandel.

MR. MANDEL: Yes, your Honor.

THE COURT: Now, you had 11-something million. Is that aggregating common and preferred, or is that all common or what --

MR. MANDEL: That was aggregate, the common and two classes of preferred, the absentee.

THE COURT: So you would have less than $10 million in common losses?

MR. MANDEL: I believe that's correct, your Honor.

MR. CERA: Your Honor, I'm looking at Mr. Ellman's declaration, and I guess there were multiple submissions on this. But this is the moving declaration, page eight of eight, for the State Boston Retirement Board. It indicates that the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

33

92cegenc

loss is 5.3 million on the common. And it doesn't differentiate between FIFO and LIFO in this district. LIFO generally is the measure, but, your Honor -- so I don't know where these sort of higher numbers are coming from.

But I think under any measure there's some question about this at a minimum, your Honor. It is a statutory requirement that the largest financial loss take the position, and we believe we have it. And I think these numbers in this declaration show that.

MR. KELLER: Your Honor, the declaration submitted, all the filings we've submitted have -- he's looking at one certification. There are two certifications, one on behalf of each movant. Combined they have a $12 million FIFO loss, which is reflected in our opening papers, our opposition papers and reply papers.

THE COURT: Can you point me to the particular pages? Do you have that -- the declarations here?

MR. KELLER: Yes, your Honor. Your Honor, on Exhibit C, which is Exhibit C to the declaration of Alan Ellman, in support of the motion of the Massachusetts public pension funds --

THE COURT: If I'm looking at the right -- I must be looking at the wrong thing, because what I'm looking at has an Exhibit C that's a press release.

MR. KELLER: Okay. Is this in connection with the --

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

34

92cegenc

THE COURT: The declaration in support of the motion for -- of Massachusetts public pension funds for appointment as lead plaintiff.

MR. KELLER: I'm sorry, your Honor. Exhibit B.

THE COURT: Exhibit B, okay.

MR. KELLER: Which is the loss chart. And what you'll see is that with respect to common stock, okay, that is going to be on page -- although they're not numbered, your Honor, I'm sorry. On page three at the top, you'll see FIFO gain/loss, and that says FIFO loss of 8.764 million. And this is only for PRIM, okay.

The next movant, Boston, which moved together, would be reflected on the last page of that document and that exhibit. And that reflects their purchase of a common stock only. And you'll see there's a FIFO loss of 5.38 million. You add those two together and you have their aggregate loss on the common stock alone.

Fannie Mae Hearing Transcript - 2.13.09

MR. CERA: Sorry. Which page is the 8 million on?

THE COURT: The $8 million on the third page of Exhibit B.

MR. KELLER: I'm sorry. The FIFO loss reflecting their stock trading only is the first line on page two, your Honor, which is 6.74, which is a number I read earlier.

THE COURT: Now I'm totally lost. I'm sorry.

MR. KELLER: The PRIM board shows their losses as

92cegenc

stock first, and then its trading and losses in the preferred stock. So there's stock losses only on page two of that exhibit.

THE COURT: Oh, right at the very top.

MR. KELLER: You'll see 6.7. And when you add that to the 5.4 of Boston, it's clearly a $12 million common stock loss.

THE COURT: Okay. So that's 6.7 plus 5.3 is roughly 12?

MR. KELLER: Correct.

THE COURT: Which is what I thought in the first place was around 12.

MR. CERA: Your Honor, the point is with respect to that, that they are aggregating the losses of two distinct entities which come into court represented by the same counsel with no showing of any prior relationship to these -- between these entities under Judge Cedarbaum's decision in Donnkenney is inappropriate to present an otherwise unrelated group and aggregate their losses to take the position of --

THE COURT: I don't think they're otherwise unrelated. One's Boston, one's Massachusetts. They both root for the Red Sox. Same guys, no problem. I've heard your point. Go mandamus me. Go do something about it. Here I've made my ruling. This is my choice. This is my decision, end of story.

All right. So I think we have a plan, yes? I have

92cegenc

standard orders in a couple of these cases from Global Crossing, for example, and Revco. You can use those as models for something to submit once you work out a schedule.

One quirk -- I don't know if it's a quirk. I'm a little anal about the idea of having lots of complaints lying around for years while these things get resolved. And so there's a standard provision in my orders that says that X days after the consolidated amended complaint is filed, all the other complaints are going to be dismissed, unless the proponents of those complaints make some kind of showing. Doesn't have to be a showing; just say they want for some reason for the complaint to stay alive, and that's fine with me.

But generally it's my experience that most people don't care and those additional complaints just remain outstanding forever. And I've inherited, you know, class action cases where there are like 15 related cases, all of which have been dormant for years. I don't see why we need to have that. But otherwise it's fairly standard.

MR. BRODY: Can we keep our case alive?

THE COURT: Sure, you want to, you have the case alive, that's fine. But the order will say that it's going to be dismissed unless you make a showing. Just write a letter saying at the appropriate time you want your case alive. That will be fine.

Case 1:09-cv-00093-PGG-SLC Document 55-18 Filed 09/28/09 Page 18 of 18

Fannie Mae Hearing Transcript - 2.13.09
(212) 805-0300

37

92cegenc

MR. BRODY: Can I just do it now?

THE COURT: You can spend the stamp, it's not a big deal. I don't want to lose track of things. I want it done in an orderly way so I know what's being dismissed and what's not being dismissed, and I don't have to hang something up today --

MR. BRODY: Can we be on the service list?

THE COURT: Sure. Put them on the service list.

MR. FEDERMAN: Bill Federman, Federman & Sherwood for Plaintiff Williams. We'd like the order simply to say it's dismissed without prejudice.

THE COURT: Sure, that's fair.

MR. FEDERMAN: We don't need to continue on the service list.

MR. FOX: One final point, your Honor. On the issue of disclosure of any fee agreements, I assume that would be disclosure to the Court only be disclosed in camera?

THE COURT: Sure. Something somebody wants to see?

MR. BRODY: I want to see it, your Honor.

THE COURT: I don't know if you get to see it. Do the defendants need to see it?

MR. BRANDT: We don't need to see it, your Honor.

THE COURT: I think it can be in camera. At least -- I'll give you notice if I choose to un-in-camera it. But, you know, I'm not sure I understand why it will matter, because in the long run, if there is anything ever to be recovered,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

38

92cegenc

there's going to be full disclosure of all of this stuff, and it's a factor that may be influential.

At this point I'm just interested in whether there is such an agreement and, you know, it's at least hypothetically something that could cause me to reconsider the appropriateness of any particular lead plaintiff, if they're giving the store away, or of any particular law firm, if they seem to me to be gouging. I don't anticipate that's going to be the case, but it seems to me it's my responsibility to at least look at that prospect.

Okay. Are we done? Have we got everything?

MR. BRODY: Your Honor, I apologize about the dialogue before with opposing counsel, but --

THE COURT: It's all right. No offense taken. I just generally respond when folks are flaccid but --

MR. BRODY: We tried to move the process, then the Jersey case came up.

THE COURT: You know, it rolled off my back because I don't even know what you're talking about. Doesn't matter.

Fair enough. Thank you all very much.

(Adjourned)

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300