## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MAHA JASTRAM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NEXTERA ENERGY, INC., JAMES ROBO, ERIC SILAGY and DAVID P. REUTER,<br><br>Defendants. | Case No. 9:23-cv-80833-AMC<br><br><br>CLASS ACTION |

### REPLY IN SUPPORT OF THE FLORIDA RETIREMENT FUNDS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF

Jackson County[1] admits it is inadequate and atypical to represent purchasers of NextEra Energy, Inc. *common stock*—which makes up over 98% of the class's losses—when it claims to have "already arranged to include" a common stockholder to address its standing, typicality, and adequacy issues. ECF No. 35 at 3 n.2. Jackson County cannot cure its own Rule 23 defects and lack of standing by adding a mystery investor to remedy its inadequacies. Plus, Jackson County hides from the Court who this stockholder is: what are their losses, how were they selected, why did they not seek appointment as a lead plaintiff, what will their role be and, most importantly, who decides on the important and critical issues concerning 98% of the class—the mystery plaintiff or Jackson County? Allowing Jackson County to select some unknown investor to cure its Rule 23 problems would turn the entire PSLRA process on its head and undermine the statute. The proposed lead plaintiff must satisfy Rule 23's typicality and adequacy requirements itself; if it cannot, it cannot be appointed lead plaintiff. 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(I).

Not only is Jackson County inadequate and atypical of the class as a whole, it does not have the largest financial interest in the relief sought by the class. As discussed in the Florida Retirement Funds' opposition brief, Jackson County's actual financial interest in the relief sought by the class—recovering for the decline in NextEra's stock price after the alleged fraud was revealed—is only $53,008.20, whereas the Florida Retirement Fund's interest is $439,501.32. *See* ECF No. 33 at 9.

Jackson County's argument that the Florida Retirement Funds should be disqualified because of minor clerical errors in their client certifications is a red herring. "Courts routinely reject criticisms based on errors in certifications, particularly where there is no evidence of bad faith or intent to deceive the court or the parties." *In re SLM Corp. Sec. Litig.*, No. 08 CIV. 1029

---

[1] Defined terms have the same meaning as in the earlier-filed briefs.

WHP, 2012 WL 209095, at *8 (S.D.N.Y. Jan. 24, 2012). Here, the Florida Retirement Funds timely self-corrected their certifications, and whether or not the Court considers their increased losses from the inadvertent disclosure of additional stock purchases does not affect the parties' relative positions.[2] Plus, Jackson County misleads when it claims the Hollywood Police failed to disclose the *First Republic* case in its certification, as the statute does not require listing a case in which a movant did not seek to serve as a lead plaintiff.

The Court should appoint the Florida Retirement Funds as lead plaintiff.

**I.     Jackson County's Offer to Add an Anonymous Common Shareholder to Remedy Its Lack of Standing  and Rule 23 Defects is an Improper Attempt to Circumvent the PSLRA**

Nearly the entire class consists of common stockholders (2.01 billion shares outstanding) who deserve to have a common stockholder, properly vetted through the PSLRA lead plaintiff process, represent them. The 6.219% preferred shares (40 million shares outstanding), which are the only shares purchased by Jackson County, account for a small fraction of the class. *See* ECF No. 33 at 12–13; ECF No. 33-1 ¶10. Jackson County concedes its standing deficiencies and admits that it cannot represent common stockholders. *See* ECF No. 35 at 3 n.2. It asks the Court to ignore its lack of standing, and Rule 23 deficiencies, because it has "already arranged to include" an unnamed common shareholder "as an additional representative plaintiff." *Id.* This proposed remedy does not cure Jackson County's own lack of standing and atypicality and inadequacy. The

---

[2] If the Court does not consider the Florida Retirement Funds' losses resulting from their revised certifications, their "*Dura*" loss would be $422,010.66—significantly greater than Jackson County's loss; LIFO losses would be $114,547.71, an 11% differential between them and Jackson County; total shares purchased would be 47,631; net shares purchased would be the same and net expenditures would be $3,574,230.24—all still significantly greater than Jackson County. The changes in loss calculations from the revised certifications does not change the relative positions among the parties or alter that Jackson County cannot represent the interests of common stockholders.

PSLRA requires the lead plaintiff itself be typical and adequate of the class' interests. 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(I). Jackson County may not evade the PSLRA's requirements or correct its defects merely by suggesting that some mysterious investor who is not properly before the Court is waiting in the wings to save it. Plus, in the one relevant case cited by Jackson County, the lead plaintiff—who had standing to represent the vast majority of the class—was authorized to add a niche plaintiff holder to gain standing for those securities.[3] Here, Jackson County inverts the niche plaintiff situation and wants the niche security holder to represent the class as a whole. To our knowledge, no court has ever authorized this outcome.

The PSLRA was designed to "ensure that the parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs counsel." *McIlvaine v. ArthroCare Corp.*, No. 08-cv-80343, 2008 WL 11331999, at *3 (S.D. Fla. July 16, 2008) (internal quotation marks omitted); *accord Cambridge Ret. Sys. v. Mednax, Inc.*, No. 18-cv-61572, 2018 WL 8804814, at *11 n.24 (S.D. Fla. Dec. 6, 2018), *report and recommendation adopted by* 2018 WL 6978626. The text of the PSLRA implements Congress's aim that courts ensure only plaintiffs most aligned with the class direct and control securities class actions. The statute directs courts to appoint as lead plaintiff the movant with the greatest interest in pursuing the class's claims by

---

[3] *See In re OSI Pharms., Inc. Sec. Litig.*, No. 04-cv-5505, 2005 WL 6171305, at *6 (S.D.N.Y. Sept. 21, 2005) (finding that Exchange Act plaintiff who owned common shares could designate additional Securities Act plaintiff who purchased shares in a specific offering issued 5 days before the end of a 7-month class period). Jackson County's remaining cases are irrelevant to the appointment of additional named plaintiffs to resolve a lead plaintiff's own lack of standing: *In re Cendant Corp. Litig.*, 182 F.R.D. 144, 149–50 (D. N.J. 1998) (appointing co-lead plaintiffs, one to represent common shareholders and another to represent holders of niche securities); *In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 594 (N.D. Cal. 2009) (certifying class after finding that lead plaintiff had standing to represent both common shareholders and purchasers of niche securities).

creating a rebuttable presumption that the most adequate plaintiff is the movant who both "has the largest financial interest in the relief sought by the class" *and* "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(I).

That Jackson County itself recognizes the need for common stockholders to have a representative firmly establishes that Jackson County cannot represent the vast majority of the class, is atypical and inadequate, and cannot be appointed as lead plaintiff. Jackson County's proposed remedy for its own inadequacy violates Congress's design by seeking to tack on a mystery common shareholder not subject to the scrutiny of the lead plaintiff selection process as the sole representative of most of the class. Jackson County claims that its mystery shareholder would serve as a "representative plaintiff," ECF No. 35 at 3 n.2, yet it has not filed the required certification or even provided the Court with a scintilla of the information the statute requires to lead a securities class action. *See* 15 U.S.C. § 78u-4(a)(2)(A). While it is unclear why Jackson County elected to conceal this shareholder's identity or losses, that decision raises serious doubts about Jackson County's ability to adequately represent the class. The Court cannot evaluate, for example, whether Jackson County's mystery plaintiff is willing to serve as a named plaintiff and provide testimony, the level of its financial interest, adequacy, and typicality, whether it has any pre-litigation relationship with Jackson County, how it proposes to make joint decisions about the class with Jackson County (or whether it will have a say at all), how many other cases it has led or sought to lead in the last three years, or whether its transactions subject it to unique defenses that could arise during class certification. *See* 15 U.S.C. § 78u-4(a)(2)(A)–(3)(B). This last concern is especially significant because of the unique defenses that Jackson County is subject to, particularly those related to the efficiency of the market for its preferred shares. *See* ECF No. 33 at 19. Should those defenses prevail, this unknown common shareholder would be the only person left to litigate

this action to its conclusion, and any weaknesses it has could prevent the class from recovering altogether. *See, e.g.*, *George v. China Auto. Sys., Inc.*, No. 11-cv-3357170, 2013 WL 3357170, at *13 (S.D.N.Y. July 3, 2013) (denying class certification on market inefficiency, adequacy, typicality, and predominance grounds).[4]

Further, Jackson County does not disclose how it selected this stockholder, or even who selected it. This raises the possibility that an unknown, unvetted, shareholder will represent the vast majority of the class with Jackson County acting as a figurehead lead plaintiff. Just who will *control* this litigation? Jackson County, whose interests align with a fraction of the class? Or the undisclosed common shareholder who curiously hid from the statute's mandatory lead plaintiff selection process?[5] Neither outcome follows the text and spirit of the PSLRA, nor does it offer any reassurance that Jackson County's defects with respect to typicality and adequacy will be remedied. This is particularly concerning because of the potential conflict of interest between common and preferred shareholders in any proposed plan of allocation. Even Jackson County's own authority explains that this is a fatal deficiency, rejecting a similarly situated preferred

---

[4] Courts are also reluctant to appoint plaintiffs who reveal little about themselves, let alone plaintiffs who are anonymous. *See, e.g., Piven v. Sykes Enters., Inc.*, 137 F. Supp. 2d 1295, 1305 (M.D. Fla. 2000) (rejecting movant because "[t]here is a dearth of information regarding [the movant] in the record. It is not even known where [the movant] is located, what its business is, if it is a foreign company, and who controls it."); *see also In re Hexo Sec. Litig.*, No. 19-cv-10965 (NRB), 2020 WL 5503634, at *1 (S.D.N.Y. Sept. 11, 2020) ("[A]mple case law supports what one would have thought is an uncontroversial point—namely, that even a preliminary showing of adequacy requires a threshold amount of information regarding an individual movant's background and sophistication."). Any attempt to do so only now, on reply, would be improper and should not be considered. *See Lage v. Ocwen Loan Servicing LLC*, 145 F. Supp. 3d 1172, 1181 (S.D. Fla. 2015), aff'd, 839 F.3d 1003 (11th Cir. 2016) (under Local Rule 7.1(c) "a reply memorandum may not raise new arguments or evidence, particularly where the evidence was available when the underlying motion was filed.") (citation and internal quotation marks omitted).

[5] It is highly suspicious that Jackson County was able to identify a common stockholder to be a representative party within two weeks of its moving for lead plaintiff—which raises the question of why this mystery common stockholder did not jointly seek to be a lead plaintiff with Jackson County in the first place.

shareholder for exactly this reason. *See* ECF No. 35 at 6 citing *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 624 n.3 (S.D.N.Y. 2015) (movant's preferred holdings "call[ed] into question [its] adequacy").

The Court should deny Jackson County's request that the case be entrusted to an unidentified and unvetted mystery investor, even more so where the Florida Retirement Funds have the largest financial interest in the relief sought by the class and are otherwise adequate and typical investors. *See* ECF No. 33 at 9.

### II.    Jackson County's Insinuations of the Florida Retirement Funds' Purported Inadequacy are Disingenuous

The PSLRA requires movants to disclose each action in which they "served, as well as *sought* to serve, as lead plaintiff." *Piven*, 137 F. Supp. 2d at1305 (citing 15 U.S.C. §78u-4(a)(2)(A)(v)). Jackson County criticizes the Florida Retirement Funds for omitting *City of Hollywood Police Officers' Ret. Sys. v. First Republic Ban*k, No. 4:23-cv-01993-DMR (N.D. Cal.), but in doing so, it fails to disclose to the Court that Hollywood Police *never sought to serve as a lead plaintiff* in that case, which was stayed following the Federal Deposit Insurance Corporation's intervention as receiver and voluntarily dismissed in less than eight weeks, before *any* lead plaintiff briefing ever took place. *See id.*, ECF Nos. 16, 17. A simple check of the docket or Google search would have confirmed as much. Jackson County, in its haste to smear the Flordia Retirement Funds, failed to even verify its accusations, calling into question its fitness to lead the class. Because Hollywood Police never sought to be appointed representative of the class in the *First Republic* case under the PSLRA, *see* 15 U.S.C. §78u-4(a)(3)(B)(i), and never had the opportunity to do so, the Florida Retirement Funds were not required to disclose a non-existent motion, *see Homyk v. ChemoCentryx, Inc.*, No. 21-CV-03343-JST, 2022 WL 20299962, at *3 (N.D. Cal. Jan.

6

28, 2022) (explaining PSLRA "only requires [movant] to have disclosed" cases "in which it 'has sought to serve' as lead plaintiff.").

Even if Hollywood Police *had* sought appointment as lead plaintiff in the *First Republic* matter (and it did not), "[t]he failure to disclose other lawsuits in which the proposed lead plaintiff is or was also serving in that capacity is not the type of credibility issue that would 'divert the fact finders' attention from the merits and thus infect the claims of the class as a whole.'" *City of Marysville Gen. Empls. Ret. Sys. v. Nighthawk Radiology Holdings, Inc.*, No. CV 09–659–EJL–CWD, 2010 WL 2000040, at *6 (D. Idaho May 19, 2010) (quoting *Dubin v. Miller*, 132 F.R.D. 269, 272 (D. Colo. 1990)). This is especially true for institutional investors. *See City Pension Fund for Firefighters & Police Officers in the City of Mia. Beach v. Aracruz Cellulose S.A.*, No. 08-23317-CIV, 2009 WL 10664427, at *4 (S.D. Fla. Aug. 7, 2009) (appointing institution where failure to disclose that it served as lead plaintiff in prior action was inadvertent).[6]

None of the limited authority Jackson County marshals on this point holds otherwise. Both cases cited by Jackson County involved *individual investors* who failed to disclose that they *moved* for lead plaintiff and, in *In re Longfin Corp. Sec. Class Action Litig.*, that the movant was *appointed* and *served* as lead plaintiff in a prior action. *See* No. 1:18-cv-02933-DLC, ECF No. 65 at 4:11-19 (S.D.N.Y. Aug. 27, 2018); *Li Hong Cheng v. Canada Goose Holdings Inc.*, No. 19-CV-8204 (VSB), 2019 WL 6617981, at *6 n.7 (S.D.N.Y. Dec. 5, 2019). Nothing like that happened here,

---

[6] *See also Kuriakose v. Fed. Home Loan Mortg. Co.*, No. 1:08-CV-7281 (JFK), 2008 WL 4974839, at *8 (S.D.N.Y. Nov. 24, 2008) (explaining institution's "omission of the one case was not very significant"); *Nighthawk Radiology*, 2010 WL 2000040, at *5–7 (institution's "[i]nadvertent" omission of two other cases did "not strike at the heart of the proposed plaintiff's ability to be truthful" and did "not serve as a basis for disqualification"); *Hartel v. SelectQuote, Inc.*, No. 21 CIV. 6903 (AKH), 2022 WL 4057445, at *2 n.3 (S.D.N.Y. Sept. 2, 2022) (institution's omission of prior lead plaintiff motion not relevant because "a minor error of such a nature is not sufficient to call into question the adequacy of counsel or 'strike at the heart' of the Rule 23 requirements.").

and even if it had, sophisticated institutional investors, unlike individual shareholders—especially those that are anonymous and unvetted—are presumed to be ready to oversee lead counsel and represent the interests of the class. *Aracruz Cellulose*, 2009 WL 10664427, at *5. The cases cited by Jackson County simply do not apply to the Florida Retirement Funds.

Jackson County and Barcelona also try to make mountains out of molehills with respect to the Florida Retirement Funds' inadvertent, self-corrected and inconsequential errors in reported trades. "Courts routinely reject criticisms based on errors in certifications, particularly where there is no evidence of bad faith or intent to deceive the court or the parties." *In re SLM Corp.*, 2012 WL 209095, at *8. This is because "minor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement." *See Niederklein v. PCS EdventuresA.com, Inc.*, No. 1:10-CV-00479, 2011 WL 759553, at *11 (D. Idaho Feb. 24, 2011); *accord Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 529 (S.D.N.Y. 2015) (citing *In re Altisource Portfolio Solutions, S.A. Securities Litigation*, 14 Civ. 81156(WPD) (S.D. Fla.)); *Pampena v. Musk*, No. 22-CV-05937-CRB, 2023 WL 3082341 (N.D. Cal. Apr. 24, 2023) (inadvertent failure to list all trades did not undermine adequacy where fixed by supplemental certification); *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 411 (D. Minn. 1998) (supplemental certifications "sufficiently rectified" multiple unrelated errors).[7] Such errors are especially inconsequential where, as here, the Florida Retirement Funds' self-correction does not change their

---

[7] Jackson County cites *Canada Goose* and *Rodriguez v. DraftKings Inc.*, 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021) to the contrary, but yet again both cases involved *individual* investors of uncertain qualifications rather than sophisticated and proven institutions. *See Carvelli v. Ocwen Fin. Corp.*, No. 9:17-CV-80500, 2017 WL 3473482, at *3 (S.D. Fla. Aug. 14, 2017) (noting "presumption inherent in . . . PSLRA that institutional investors serve as better lead plaintiffs." (citation omitted)). Moreover, unlike here, the competing movants in *DraftKings* argued that the investor omitted "millions of dollars" of trades and the errors were not self-corrected. 2021 WL 5282006 at *5–6, 9.

position relative to the other movants. *See Tai Jan Bao v. SolarCity Corp.*, No. 14-CV-01435-BLF, 2014 WL 3945879, at \*3 (N.D. Cal. Aug. 11, 2014) (movant "still has a greater financial interest" after revising error and therefore "error has not prejudiced other movants."); *see also Hansen v. Ferrellgas Partners, L.P.*, No. 16-CV-7840 (RJS), 2017 WL 281742, at \*5 (S.D.N.Y. Jan. 19, 2017) (same). Besides, none of the Florida Retirement Funds' arguments turn on the Court considering the revised losses stemming from their corrected certifications. No matter which loss figures the Court considers, the Florida Retirement Funds' losses are far greater than Barcelona's and their financial interest is far larger than that of Jackson County. Nor do the minor revisions change that Jackson County is inadequate and atypical of common stockholders, and should not be appointed as lead plaintiff.

### III.    Jackson County's Halfhearted Suggestion that the Florida Retirement Funds May Not Aggregate their Losses is Wrong

Groups of investors may aggregate their losses and cooperatively move for lead plaintiff without controversy. *See Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 503 (S.D. Fla. July 31, 2002) (collecting cases). "When moving for lead plaintiff, aggregation of individual losses to form a small group is acceptable and derives from the language of the PSLRA which states that the most adequate plaintiff is the 'person or group of persons.'" *In re 21st Century Holding Co. Sec. Litig.*, No. 07-61057-CIV, 2007 WL 9220955, at \*4 (S.D. Fla. Nov. 20, 2007) (internal quotations and citation omitted); *see also* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). There is "no requirement contained in the PSLRA that the group of persons serving as lead plaintiff have a relationship among themselves." *Id.* (quoting *Eagle Bldg. Techs*, 209 F.R.D. at 503). While some courts view "unrelated" groups lacking any "prelitigation relationship" with skepticism, even those courts,

9

including the authority Jackson County cites, agree that small groups with preexisting relationships are adequate lead plaintiffs under the PSLRA. *See Mednax*, 2018 WL 8804814, at *14.[8]

Jackson County's suggestion that the "only common thread" between the Florida Retirement Funds is their legal counsel is risible. ECF No. 36 at 6. The Florida Retirement Funds have a preexisting relationship, ECF No. 25-5 at ¶9, have been selected to serve together as lead plaintiffs in multiple securities actions, *id.* at ¶8, and are therefore an adequate group even under the strictest possible approach. Hollywood and Pembroke Pines, homes of the Florida Retirement Funds, are not only both located within this District, but are neighboring municipalities that share a high school. Jackson County's suggestion that their cooperation is a contrivance for the sake of litigation is baseless.

## IV.  Conclusion

For all these reasons, the Court should appoint the Florida Retirement Funds as lead plaintiff. At best, the Court could consider creating a sub-class of preferred stock purchasers and appointing Jackson County as lead of this sub-class.

---

[8] Jackson County's attack is disingenuous given that it is proposing it operate as a group to run the ligitation, but without its "co-representative" complying with the PSLRA by timely moving for lead plaintiff. Jackson County also seeks to conceal who its partner is, its trading in NextEra common stock, its purported losses, and whether it has any pre-litigation relationship with Jackson County. Attempts to add another plaintiff after the statutory lead plaintiff deadline should be rejected. *See In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 439–40 (S.D. Tex. 2002) (PSLRA "is unequivocal and imposes precise time requirements" including that motions for appointment of lead plaintiff "must be filed within sixty days of the published notice.").

August 15, 2023                                    Respectfully submitted,

                                                  */s/ Chris Gold*
                                                  Chris Gold, Esq.
                                                  Florida Bar No. 088733
                                                  chris@edelsberglaw.com
                                                  **EDELSBERG LAW, P.A.**
                                                  20900 NE 30th Ave., Suite 417
                                                  Aventura, FL 33180
                                                  (786) 673-2405 phone

                                                  Scott Edelsberg, Esq.
                                                  Florida Bar No. 0108039
                                                  scott@edelsberglaw.com
                                                  **EDELSBERG LAW, P.A.**
                                                  20900 NE 30th Ave., Suite 417
                                                  Aventura, FL 33180
                                                  (305) 975-3320 phone

                                                  *Liaison Counsel for Movant Florida*
                                                  *Retirement Funds and Proposed Liaison*
                                                  *Counsel for the Class*

                                                  **BLOCK & LEVITON LLP**
                                                  Jeffrey C. Block, Esq. (*pro hac vice*)
                                                  Jacob Walker, Esq. (*pro hac vice*)
                                                  Brendan Jarboe, Esq. (*pro hac vice*)
                                                  260 Franklin Street, Suite 1860
                                                  Boston, MA 02110
                                                  jeff@blockleviton.com
                                                  jake@blockleviton.com
                                                  brendan@blockleviton.com
                                                  (617) 398-5600 phone
                                                  (617) 507-6020 fax

                                                  *Counsel for Movant Florida Retirement Funds*
                                                  *and Proposed Lead Counsel for the Class*

                                                  **KLAUSNER, KAUFMAN, JENSEN &**
                                                  **LEVINSON, P.A.**
                                                  Robert D. Klausner
                                                  7080 Northwest 4th Street
                                                  Plantation, FL 33317
                                                  Telephone: (954) 916-1202
                                                  Facsimile: (954) 916-1232
                                                  bob@robertdklausner.com

*Additional Counsel for Movant Florida*
*Retirement Funds*

## CERTIFICATE OF SERVICE

I hereby certify that on this on the 15th day of August, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ *Chris Gold*
Chris Gold

13