UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No. 9:23-cv-80833-Civ-CANNON/REINHART

| | |
|---|---|
| MAHA JASTRAM, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br> vs.<br><br>NEXTERA ENERGY, INC., et al.,<br><br>        Defendants. | <u>CLASS ACTION</u> |

JACKSON COUNTY EMPLOYEES' RETIREMENT SYSTEM'S REPLY IN FURTHER
SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF

Case No. 9:23-cv-80833-Civ-CANNON/REINHART

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT ........................................................................................................................1

    A.    PPF&PPF and HPORS's Revised Financial Interest Test Is Contrary to Law ......................................................................................................................2

    B.    Preferred Stock Purchasers Are Appointed as Lead Plaintiff in Cases Involving Common Stock Purchasers......................................................................4

    C.    NextEra Preferred and Common Stock Moved in Tandem Throughout the Class Period ..............................................................................................................6

    D.    Jackson County ERS Is Conflict-Free ...................................................................7

III. CONCLUSION ...................................................................................................................10

Case No. 9:23-cv-80833-Civ-CANNON/REINHART

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Aronson v. McKesson HBOC, Inc.*,
79 F. Supp. 2d 1146 (N.D. Cal. 1999) ................................................................................2, 8

*Barua v. Zillow Grp., Inc.*,
2022 WL 474000 (W.D. Wash. Feb. 16, 2022) ..........................................................................8

*Bodri v. Gopro, Inc.*,
2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) ...........................................................................8

*Borenstein v. Finova Grp. Inc.*,
2000 WL 34524743 (D. Ariz. Aug. 30, 2000)..........................................................................10

*Chandler v. Ulta Beauty, Inc.*,
2018 WL 3141763 (N.D. Ill. June 26, 2018) .............................................................................2

*City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*,
2021 WL 396343 (S.D.N.Y. Feb. 4, 2021)................................................................................2

*Colwell v. Exicure Inc.*,
2023 WL 2572454 (N.D. Ill. Mar. 20, 2023)............................................................................4

*Cook v. Allergn PLC*,
2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) ..........................................................................2

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)................................................................................................................2, 3

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ...............................................................................................7

*Glick v. Arqit Quantum Inc.*,
2023 WL 2764741 (E.D.N.Y. Mar. 31, 2023)...........................................................................7

*Gutman v. Sillerman*,
2015 WL 13791788 (S.D.N.Y. Dec. 8, 2015) ...........................................................................3

*Harold Roucher Tr. U/A DTD 09/21/72 v. Franklin Bank Corp.*,
2009 WL 1941864 (S.D. Tex. July 6, 2009)............................................................................10

Case No. 9:23-cv-80833-Civ-CANNON/REINHART

**Page**

*Hevesi v. Citigroup Inc.*,
   366 F.3d 70 (2d Cir. 2004) ..................................................................................................5, 9

*Hirtenstein v. Cempra, Inc.*,
   2017 WL 2874588 (M.D.N.C. July 5, 2017) .......................................................................2, 3

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
   2011 WL 4538428 (S.D.N.Y. Sept. 29, 2011) ........................................................................9

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
   258 F.R.D. 260 (S.D.N.Y. 2009) .............................................................................................9

*In re BP, PLC Sec. Litig.*,
   758 F. Supp. 2d 428 (S.D. Tex. 2010) ...................................................................................10

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ...................................................................................................1

*In re Cendant Corp. Litig.*,
   182 F.R.D. 144 (D.N.J. 1998) ..................................................................................................5

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) .....................................................................................................1

*In re Century Bus. Servs. Sec. Litig.*,
   202 F.R.D. 532 (N.D. Ohio 2001) ...........................................................................................6

*In re CTI Biopharma Corp. Sec. Litig.*,
   2016 WL 7805876 (W.D. Wash. Sept. 2, 2016) ...................................................................4, 8

*In re Enron Corp. Sec. Litig.*,
   206 F.R.D. 427 (S.D. Tex. 2002) .............................................................................................5

*In re Fannie Mae Matters*,
   No. 1:08-cv-07831 (S.D.N.Y. Feb. 13, 2009) .........................................................................8

*In re Forcefield Energy Inc. Sec. Litig.*,
   2015 WL 4476345 (S.D.N.Y. July 22, 2015) ..........................................................................7

*In re Network Assocs., Inc., Sec. Litig.*,
   76 F. Supp. 2d 1017 (N.D. Cal. 1999) .....................................................................................4

Case No. 9:23-cv-80833-Civ-CANNON/REINHART

**Page**

*In re Nw. Corp. Sec. Litig.*,
   299 F. Supp. 2d 997 (D.S.D. 2003) ......................................................................9

*In re OSI Pharm., Inc. Sec. Litig.*,
   2005 WL 6171305 (E.D.N.Y. Sept. 21, 2005) ...................................................6, 9

*In re Parmalat Sec. Litig.*,
   No. 1:04-cv-00030 (S.D.N.Y. May 21, 2004) .....................................................8

*In re Petrobras Sec. Litig.*,
   104 F. Supp. 3d 618 (S.D.N.Y. 2015)..................................................................8

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
   2015 WL 8207331 (S.D. Tex. Dec. 7, 2015)........................................................8

*In re Sepracor Inc.*,
   233 F.R.D. 52 (D. Mass. 2005)............................................................................5

*In re Surebeam Corp. Sec. Litig.*,
   2004 WL 5159061 (S.D. Cal. Jan. 5, 2004).........................................................8

*In re WatchGuard Sec. Litig.*,
   2005 WL 8188936 (W.D. Wash. July 13, 2005) ..................................................4

*In re Wrap Techs., Inc. Sec. Exch. Act Litig.*,
   2021 WL 71433 (C.D. Cal. Jan. 7, 2021) ............................................................3

*In re XM Satellite Radio Holdings Sec. Litig.*,
   237 F.R.D. 13 (D.D.C. 2006)............................................................................1, 9

*Irving Firemen's Relief &Ret. Fund v. Tesco PLC*,
   2015 WL 1345931 (S.D.N.Y. Mar. 19, 2015) ....................................................9

*Mehedi v. View, Inc.*,
   2022 WL 377406 (N.D. Cal. Feb. 8, 2022) .........................................................4

*New Hampshire v. Maine*,
   532 U.S. 742 (2001)...........................................................................................10

*Parot v. Clarivate Plc*,
   2022 WL 1568735 (E.D.N.Y. May 18, 2022) ......................................................6

Case No. 9:23-cv-80833-Civ-CANNON/REINHART

**Page**

*Pelletier v. Endo Int'l PLC*,
    316 F. Supp. 3d 846 (E.D. Pa. 2018) ........................................................................................4

*Peters v. Twist Bioscience Corp.*,
    2023 WL 4849431 (N.D. Cal. July 28, 2023)......................................................................2, 3

*Plaut v. Goldman Sachs Grp., Inc.*,
    2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019)...........................................................................4

*Porzio v. Overseas Shipholding Grp.*,
    2013 WL 407678 (S.D.N.Y. Feb. 1, 2013)...............................................................................8

*Reimer v. Ambac Fin. Grp., Inc.*,
    2008 WL 2073931 (S.D.N.Y. May 9, 2008) ............................................................................7

*Sallustro v. CannaVest Corp.*,
    93 F. Supp. 3d 265 (S.D.N.Y. 2015).........................................................................................3

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
    2023 WL 3750115 (S.D.N.Y. June 1, 2023) ............................................................................3

*Schueneman v. Arena Pharm., Inc.*,
    2011 WL 3475380 (S.D. Cal. Aug. 8, 2011) ...........................................................................9

*Simco v. Aegean Marine Petroleum Network Inc.*,
    2018 WL 11226076 (S.D.N.Y. Oct. 30, 2018)........................................................................3

*Tanne v. Autobytel, Inc.*,
    226 F.R.D. 659 (C.D. Cal. 2005)..............................................................................................9

*Zirkin v. Quanta Cap. Holdings Ltd.*,
    No. 1:07-cv-00851 (S.D.N.Y. May 7, 2007) ...........................................................................8

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78j(b)........................................................................................................................................7
    §78u-4(a)(3)(B)(iii)(II) .............................................................................................................1
    §78u-4(e)(1) ..............................................................................................................................3

Case No. 9:23-cv-80833-Civ-CANNON/REINHART

## I.     INTRODUCTION

Despite the uncontroverted fact that Jackson County ERS suffered larger losses than each of the other movants, it appears the situation has "bec[o]me more complex after the initial motions were filed and the unseemly jockeying for position as lead plaintiff beg[i]ns."[1]  Any effort to complicate and distort what Congress intended to be an early and simple process should be seen for what it is: an implicit acknowledgement that Jackson County ERS *is* the presumptive lead plaintiff.

While PPF&PPF and HPORS's speculative arguments are variations on the theme that Jackson County ERS' investment is different enough that its motion should be denied (or granted together with PPF&PPF and HPORS), none of those arguments amount to the "proof" the PSLRA requires to rebut the presumption.  Rather, PPF&PPF and HPORS are left with inviting the Court to abandon the PSLRA's sequential process in favor of a "freewheeling comparison of the parties competing for lead plaintiff." *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002).  The Court should decline their invitation.

Ultimately, because no movant can rebut the presumption in favor of Jackson County ERS' appointment as lead plaintiff here, its motion should be granted.

## II.     ARGUMENT

To rebut the presumption in favor of Jackson County ERS' appointment as lead plaintiff, the PSLRA requires the other movants to submit "proof" that Jackson County ERS "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses."  15 U.S.C. §78u-4(a)(3)(B)(iii)(II).  Importantly, "once the presumption is triggered, the question *is not* whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can *prove* that the presumptive lead plaintiff will not do a 'fair[] and adequate[]' job." *In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) (stressing that "inquiry *is not* a relative one") (emphasis added and in original); *Cavanaugh*, 306 F.3d at 732 ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, [it] is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job."); 15 U.S.C. §78u-4(a)(3)(B)(iii)(II) (presumption rebuttable

---

[1]    *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 18 (D.D.C. 2006).  All emphasis is added and all citations are omitted unless otherwise noted.

only upon "proof").  Here, no such proof exists and "speculations about possible conflicts do not rebut the statutory presumption that one lead plaintiff can vigorously pursue *all* available causes of action against *all* possible defendants under *all* available legal theories."  *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1151 (N.D. Cal. 1999) (emphasis in original).

### A.  PPF&PPF and HPORS's Revised Financial Interest Test Is Contrary to Law

PPF&PPF and HPORS's newly-adopted financial interest test should be viewed with considerable skepticism.  Tellingly, PPF&PPF and HPORS's motion made no attempt to set forth their losses based on the novel *Dura* methodology – or the shares purchased metric – now advanced in their opposition brief.  *See* ECF 25-2 at 5 (nowhere citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005), or stating their shares purchased, but rather contending that "Retirement Funds sustained combined losses of approximately $114,547.10 on a LIFO basis").  It was only *after* competing lead plaintiff motions were filed, and it became evident that Jackson County ERS suffered the largest financial interest, that PPF&PPF and HPORS abruptly changed their loss calculation in an attempt to leapfrog Jackson County ERS' financial interest.  But "[d]istrict courts across the country have uniformly disapproved of such gamesmanship in PSLRA lead plaintiff motions, whereby movants revise their loss analysis after seeing what other competing movants have submitted."  *Peters v. Twist Bioscience Corp.*, 2023 WL 4849431, at *4 (N.D. Cal. July 28, 2023).[2]  So too should this Court.

Moreover, as their own table illustrates, "application of [the movant's] proposed new loss

---

[2]  *See also City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, 2021 WL 396343, at *4 (S.D.N.Y. Feb. 4, 2021) ("Presenting new methodologies, loss calculations, or substantive allegations only in opposition, after the PSLRA deadline for moving to be appointed lead Plaintiff has closed, is the type of opportunism that is generally unfavored in appointing lead plaintiffs."); *Cook v. Allergn PLC*, 2019 WL 1510894, at *3 (S.D.N.Y. Mar. 21, 2019) ("The fact that DeKalb used the same methodology as BRS in its original moving papers – only to alter its calculation when it learned that someone else had a larger loss – lends validity to the conclusion that the impact of *Dura* on the proposed lead plaintiffs' loss calculations is at best uncertain, and so should be discounted."); *Chandler v. Ulta Beauty, Inc.*, 2018 WL 3141763, at *3 n.5 (N.D. Ill. June 26, 2018) ("courts have rejected proposals to alter a proposed loss calculation method made after it was apparent that the proponent of the change would not have the largest financial interest under the initially proposed method"); *Hirtenstein v. Cempra, Inc.*, 2017 WL 2874588, at *3 n.4 (M.D.N.C. July 5, 2017) ("The court rejects the Gluck Group's request to 'change[ ] [its] method of valuation upon realizing [its] defeat' under normal valuation methods.").

model leads to absurd results." *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 276 (S.D.N.Y. 2015) (rejecting movant's attempt to use no-purchase price *Dura* method).  Indeed, under this new method, PPF&PPF and HPORS's so-called "*Dura* Losses" are nearly four times the size of their LIFO loss.  *See* ECF 33 at 9.  Ignoring, for a moment, that this methodology was mentioned nowhere in their opening brief, such methods are regularly rejected as "inconsistent with the statutory scheme and with *Dura* itself."  *Sallustro*, 93 F. Supp. 3d at 276 (recognizing that "*Dura* merely holds that, in fraud-on-the-market cases, 'an inflated purchase price will not itself constitute or proximately cause the relevant economic loss' and that "a plaintiff must plead loss causation – *i.e.*, a sale or retention of stock after a corrective disclosure"); 15 U.S.C. §78u-4(e)(1) (providing that damages "**shall not exceed**" the "difference between the purchase or sale price paid . . . and the mean trading price of that security during the 90–day period beginning on the date on which [disclosure is made]").[3]  Given the statutory scheme, it would be odd to apply a method that ignores the purchase price.

Indeed, in a securities fraud action like this one, plaintiff's "damages depend on how greatly the purchase price was inflated by the defendant's misrepresentation, since only that price premium, which dissipates following the disclosure of the truth, may be recovered by the plaintiffs."  *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, 2023 WL 3750115, at *6 (S.D.N.Y. June 1, 2023) (citing *Dura*).  Thus, the new method PPF&PPF and HPORS propose here is "flawed on the merits" because it "considers only the changes that occur immediately after the defendant's disclosures" and "ignores all other changes in a security's price during the class period, including those changes that *are* attributable to the defendant's alleged fraud."  *Id.* (emphasis in original).  Given that courts "typically employ LIFO" when considering losses and "and given that the [PPF&PPF and HPORS] group itself advocated using LIFO before they learned that a rival group of movants had greater losses under that metric, the Court will not replace LIFO with another metric that is itself flawed."  *Id.*

The handful of out-of-circuit cases PPF&PPF and HPORS cite are plainly inapposite.  ECF

---

3    *See also Peters*, 2023 WL 4849431, at *5 ("UPR fails to demonstrate how this methodology – which largely disregards the amounts of putative class members' purchase prices – is supported by *Dura* or warranted under the PSLRA."); *In re Wrap Techs., Inc. Sec. Exch. Act Litig.*, 2021 WL 71433, at *2 (C.D. Cal. Jan. 7, 2021) (same); *Simco v. Aegean Marine Petroleum Network Inc.*, 2018 WL 11226076, at *2-*3 (S.D.N.Y. Oct. 30, 2018) (same); *Hirtenstein*, 2017 WL 2874588, at *3 n.4 (same); *Gutman v. Sillerman*, 2015 WL 13791788, at *4-*6 (S.D.N.Y. Dec. 8, 2015) (same).

33 at 7.  Unlike this case, *Mehedi v. View, Inc.*, 2022 WL 377406 (N.D. Cal. Feb. 8, 2022), involved a single, end-of-class-period disclosure, not multiple disclosures. *Id.* at *5.  Courts universally agree that the "retained shares method" cannot be used in a multiple disclosure case like this one where the fraud premium fluctuates. *Compare* ECF 14 at ¶¶5-8, 57, 59-61 (alleging leakage over period of time) *with Plaut v. Goldman Sachs Grp., Inc.*, 2019 WL 4512774, at *4 (S.D.N.Y. Sept. 19, 2019) ("Under the circumstances presented here, in which the complaint alleges multiple partial disclosures over the course of the Class Period, courts have been reluctant to apply a *Dura*-based approach to calculating losses.") (citing cases).[4]

In sum, courts do not ignore purchase price in estimating recoverable losses pursuant to the PSLRA.  Nor do they allow movants to opportunistically abandon their initially-advocated for financial interest test.  As such, Jackson County ERS suffered the largest loss.

> **B.**     **Preferred Stock Purchasers Are Appointed as Lead Plaintiff in Cases Involving Common Stock Purchasers**

Hoping to persuade the Court that Jackson County ERS' investment in NextEra Energy, Inc. securities is somehow unusual, PPF&PPF and HPORS boldly contend that "as best as we are aware, no court has ever appointed a movant who purchased only preferred stock to be the sole lead plaintiff of a class primarily composed of common stockholders."  ECF 33 at 1-2.  Wrong.  A simple Westlaw or Lexis search reveals the law that rejects the same arguments PPF&PPF and HPORS make here and grants a lead plaintiff motion by the investor with the largest loss based on purchases of preferred stock. *See In re CTI Biopharma Corp. Sec. Litig.*, 2016 WL 7805876, at *4 (W.D. Wash. Sept. 2, 2016).[5]

---

[4]     *See also In re WatchGuard Sec. Litig.*, 2005 WL 8188936, at *3 (W.D. Wash. July 13, 2005) (holding that when the "fraud premium fluctuates, neither the gross nor the net number of shares purchased is a good indicator of financial loss, since the loss depends on how large the fraud premium was at the time of the purchase"); *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) (acknowledging that retained shares method "gets into trouble . . . if the amount of the 'fraud premium' varied" during class period).  PPF&PPF and HPORS also cite *Colwell v. Exicure Inc.*, 2023 WL 2572454 (N.D. Ill. Mar. 20, 2023), but that court did not ignore purchase price; it merely "exclud[ed] any losses occurring before" the first alleged disclosure. *Id.* at *4; *Pelletier v. Endo Int'l PLC*, 316 F. Supp. 3d 846, 849 (E.D. Pa. 2018) (same).

[5]     Courts decline to follow PPF&PPF and HPORS's balkanized approach even at the class certification stage, opting instead to appoint purchasers of one type of securities to represent

This Court should have no difficulty reaching the same conclusion as "[n]othing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004). "Rather, because the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim" which is why "the PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class." *Id.* at 83 & n.13 (recognizing that "any requirement that a different lead plaintiff be appointed to bring every single available claim would contravene the main purpose of having a lead plaintiff – namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole"). As one court noted in rejecting a similar attempt to splinter a case:

> More likely than not, the putative class in any large shareholder action will be composed of plaintiffs whose portfolios differ in composition from one another. This, however, does not justify the appointment of potentially innumerable co-lead plaintiffs to ensure that each individualized interest is represented. Competing movants may be correct that the resolution of this case could ultimately favor holders of one type of security over the others. On the other hand, representation by a disparate group of plaintiffs, each seeking only the protection of its own interests, could well hamper the force and focus of the litigation. A balance must be struck.

*In re Cendant Corp. Litig.*, 182 F.R.D. 144, 148 (D.N.J. 1998) ("notwithstanding every plaintiff's undeniable interest in an outcome most favorable to his or her position, every warrior in this battle cannot be a general"); *Enron*, 206 F.R.D. at 451 ("[t]aken to its logical extreme," such an "argument that each group of [securities] . . . requires a different class or subclass and separate Lead Plaintiff would fracture this litigation into hundreds of classes or subclasses and obstruct any efficient and controlled progress").

This is particularly so here considering that the Complaint filed by counsel for PPF&PPF and HPORS expressly defined the putative class as "persons and entities that purchased or otherwise

---

purchasers of other types of securities of the same issuer when all interests are aligned. *See In re Sepracor Inc.*, 233 F.R.D. 52, 56 (D. Mass. 2005) (appointing purchaser of options as lead plaintiff for class that included purchasers of all defendant company's equity securities); *see also In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 445 (S.D. Tex. 2002) ("[C]ourts have repeatedly concluded that stock purchasers can represent purchasers of debt instruments and vice versa in the same action.").

acquired NEE *securities*" – that is, both common and preferred stock – during the Class Period. *See* ECF 14 at ¶2. Having broadly defined the class as including *all* NextEra securities, PPF&PPF and HPORS and their counsel cannot now exclude securities other than NextEra common stock simply because it suits their current needs. *In re Century Bus. Servs. Sec. Litig.*, 202 F.R.D. 532, 536 (N.D. Ohio 2001) (movants with smaller financial interests "cannot simply define the class they seek to represent" by "trying to shrink the kingdom until they are king").

Ultimately, "the PSLRA requires courts to appoint the movant with the largest financial stake in the outcome, rather than the party with standing to sue on all claims." *Parot v. Clarivate Plc*, 2022 WL 1568735, at *6 (E.D.N.Y. May 18, 2022) (finding that investor with largest loss has "demonstrated typicality despite its lack of standing to bring Securities Act claims, based on the purchase of preferred shares"); *In re OSI Pharm., Inc. Sec. Litig.*, 2005 WL 6171305, at *5 (E.D.N.Y. Sept. 21, 2005) ("Brody's lack of standing to assert Securities Act claims does not render him incapable of satisfying the typicality requirement."). Here, that movant is Jackson County ERS.

### C. NextEra Preferred and Common Stock Moved in Tandem Throughout the Class Period

Next, PPF&PPF and HPORS contend that the price of NextEra common and preferred stock traded at different prices and that fact precludes Jackson County ERS' appointment. Wrong again. As the below chart illustrates, any minute difference is one of degree, not kind:



Another court faced with a similar contention that the claims of bondholders and stockholders were supposedly too different recognized that "a single company's stock price and bond price are not completely independent." *In re Forcefield Energy Inc. Sec. Litig.*, 2015 WL 4476345, at *6 (S.D.N.Y. July 22, 2015). To the contrary, "it is reasonable to expect that the same [negative company-specific] information will cause a significant decrease in the value of the company's corporate bonds" as the stock. *Id.* "It is likely, then, that the equity-holders and note-holders will share exactly the same objectives: proof that defendants lied, proof that defendants' misrepresentations artificially propped up [the company's] stock and bond prices, and recovery (with pro rata distribution) of their investment losses." *Id.*

And in *Glick v. Arqit Quantum Inc.*, 2023 WL 2764741 (E.D.N.Y. Mar. 31, 2023), competing movants argued the investor with the largest loss was subject to a unique defense because he purchased a significant amount of securities other than common stock – warrants – which made up less than 15% of the total class and rendered that investor atypical of the common stock investors. *Id.* at *6. That court was "not persuaded" because it is well-settled that "a lead plaintiff's claims need not be identical to the claims of the class, and "similarity of legal theory may control even in the face of differences of fact." *Id.* (recognizing that "factual differences in the securities at issue do not change the theory of liability against [the company]") (cleaned up).

Here, as in *Forcefield* and *Glick*, no NextEra investor – regardless of whether they purchased common or preferred stock – will be able to recover anything without proving ***all*** of the common shared elements of a §10(b) claim first. Consequently, PPF&PPF and HPORS is wrong (again) in arguing that investors who purchased preferred shares are not afforded the same rights and presumptions under the federal securities laws.

### D.    Jackson County ERS Is Conflict-Free

Next, PPF&PPF and HPORS speculate that Jackson County ERS may be subject to an unspecified conflict in the future. *See* ECF 33 at 14-17. But the law is clear that hypothetical conflicts are insufficient under the PSLRA to either rebut the most adequate plaintiff presumption or warrant the appointment of a co-lead plaintiff.[6] Moreover, "'speculation about potential class

---

[6]    *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y. 2011) ("the conflict of interest must be shown, not merely speculated, in order to rebut the presumption"); *Reimer v. Ambac Fin.*

standing problems should not be resolved by the appointment of multiple lead plaintiffs . . . , but by the appointment, if necessary and desirable, of additional class representatives as the litigation proceeds.'" *Bodri v. Gopro, Inc.*, 2016 WL 1718217, at *6 (N.D. Cal. Apr. 28, 2016); *CTI Biopharma*, 2016 WL 7805876, at *4 (recognizing, in appointing preferred stockholder as sole lead plaintiff, that "[p]otential standing issues with respect to certain claims do not preclude appointment as lead plaintiff and can be resolved by the appointment of additional class representatives as the litigation proceeds"). Indeed, the "statute presumes that 'one lead plaintiff can vigorously pursue all available causes of action against all possible defendants under all available legal theories."' *Surebeam*, 2004 WL 5159061, at *10; *Barua v. Zillow Grp., Inc.*, 2022 WL 474000, at *3 (W.D. Wash. Feb. 16, 2022) (rejecting "speculation" concerning presumptive lead plaintiff's possible future "decision-making" because all "Movants raise the same claims against Defendants . . . , and all allege that they suffered damages when Zillow's stock price fell, regardless of" their ownership of different securities); *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 2015 WL 8207331, at *5 (S.D. Tex. Dec. 7, 2015) ( "'[d]ifferent interests need not necessarily constitute fatal conflicts'" where the "record reflects no apparent conflicts and no inability or unwillingness by [the presumptive lead plaintiff] or its counsel, Robbins Geller Rudman & Dowd LLP, to pursue the class claims").[7]

Regardless of the hypothetical conflict PPF&PPF and HPORS suggest might (or might not) exist at some point in the future, even in cases in which the corporate entity had already declared bankruptcy, "[c]ourts have frequently found that a stockholder can adequately represent a bondholder and vice versa." *Porzio v. Overseas Shipholding Grp.*, 2013 WL 407678, at *4 (S.D.N.Y. Feb. 1, 2013) (further finding that challenger "has not argued convincingly that the

---

*Grp., Inc.*, 2008 WL 2073931, at *4 (S.D.N.Y. May 9, 2008) (same); *In re Surebeam Corp. Sec. Litig.*, 2004 WL 5159061, at *10 (S.D. Cal. Jan. 5, 2004) ("court may not rely on speculations about possible future conflicts" to rebut presumption); *Aronson*, 79 F. Supp. 2d at 1151 (same).

[7]   PPF&PPF and HPORS's cases are inapposite as they primarily involved already-bankrupt corporate entities. *See, e.g.*, *In re Parmalat Sec. Litig.*, No. 1:04-cv-00030 (S.D.N.Y. May 21, 2004) (bankrupt company); *In re Fannie Mae Matters*, No. 1:08-cv-07831 (S.D.N.Y. Feb. 13, 2009) (same); *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 623, 624 n.3 (S.D.N.Y. 2015) (same). And *Zirkin v. Quanta Cap. Holdings Ltd.*, No. 1:07-cv-00851 (S.D.N.Y. May 7, 2007), actually appointed the preferred shareholder as lead plaintiff alongside another investor based on concerns regarding the timing, not nature, of the investment made after a significant disclosure. *See* ECF 33-2 at 31.

bondholders' interest in OSG's bankruptcy estate will undermine their ability or willingness to forcefully advocate the PSLRA claims at issue in this litigation").[8]

As a sophisticated lead plaintiff with extensive experience serving as a fiduciary, Jackson County ERS is well aware that as lead plaintiff, it would be empowered to control the management of the litigation as a whole and that it would represent all class members and explore the viability of asserting all possible claims. *See, e.g.*, *OSI Pharm.*, 2005 WL 6171305, at *6 ("'Lead Plaintiffs have a responsibility to identify and include named plaintiffs who have standing to represent the various potential subclasses of plaintiff who may be determined, at the class certification stage, to have distinct interests or claims.'"); *Hevesi*, 366 F.3d at 83 ("the PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class"); *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 2011 WL 4538428, at *2 (S.D.N.Y. Sept. 29, 2011) ("[A] lead plaintiff may seek to incorporate additional named class plaintiffs in order to resolve any standing concerns."); *Schueneman v. Arena Pharm., Inc.*, 2011 WL 3475380, at *5 (S.D. Cal. Aug. 8, 2011) ("Being a lead plaintiff is not the same thing as being a class representative, and additional named plaintiffs may be added later to represent subclasses of plaintiffs with distinct interests or claims."). Jackson County ERS has proactively arranged to include an investor that purchased common stock during the Class Period as an additional representative plaintiff if Jackson County ERS is appointed lead plaintiff. *See* ECF 35 at 3 n.2.[9]

---

[8] For the same reason, Mr. Barcelona's request for appointment as co-lead plaintiff should be denied. *See Irving Firemen's Relief &Ret. Fund v. Tesco PLC*, 2015 WL 1345931, at *4-*5 (S.D.N.Y. Mar. 19, 2015) (finding argument that movant should be appointed co-lead plaintiff because he purchased a distinct security from the presumptive lead plaintiff "unpersuasive"); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 271 (S.D.N.Y. 2009) (denying movant's request for "appointment as niche plaintiff" as it "would add to the expense of the litigation" and "is not warranted under the circumstances"); *XM Satellite*, 237 F.R.D. at 20 (declining movants' request for appointment of separate lead plaintiff based on nature of investment); *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 670 (C.D. Cal. 2005) (rejecting movants' request to "appoint co-lead plaintiffs – one to represent the section 11 claimants and one to represent the section 10(b) claimants"); *In re Nw. Corp. Sec. Litig.*, 299 F. Supp. 2d 997, 1007 (D.S.D. 2003) (finding that presumptive lead plaintiff "need not have suffered a loss on each type of security at issue to serve as the Lead Plaintiff in this litigation").

[9] The same cannot be said for PPF&PPF and HPORS and their proposed lead counsel who are on record as antagonistic towards preferred share purchasers, despite counsel's express inclusion of

Case No. 9:23-cv-80833-Civ-CANNON/REINHART

### III.     CONCLUSION

A single theme will emerge from the handful of reasons offered against Jackson County ERS' appointment as the sole lead plaintiff: the challengers will attempt to persuade the Court that they would be a ***better*** lead plaintiff.  They will contend that they have a stronger claim, are more typical or more adequate, or are from Florida and can eliminate defendants' home field advantage. The question, however, is ***not*** whether another movant might do a better job of protecting the class's interests than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a fair and adequate job.  Here, they have not and cannot.

Jackson County ERS' motion should be granted.

DATED:  August 15, 2023                        Respectfully submitted,

                                               ROBBINS GELLER RUDMAN
                                                 & DOWD LLP
                                               PAUL J. GELLER
                                               Florida Bar No. 984795
                                               KATHLEEN B. DOUGLAS
                                               Florida Bar No. 043240


                                                    s/ Paul J. Geller
                                               _____
                                                    PAUL J. GELLER

---

such securities in the putative class definition, which only further militates against their appointment to lead this action.  *See* ECF 33; *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (judicial estoppel doctrine "'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase'"); *see also In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 438 (S.D. Tex. 2010) ("the Court finds it particularly important at this early stage of the case to avoid prejudicing the claims of absent class members through the appointment of a lead plaintiff who cannot fully and fairly represent them"); *Harold Roucher Tr. U/A DTD 09/21/72 v. Franklin Bank Corp.,* 2009 WL 1941864, at *3 (S.D. Tex. July 6, 2009) ("The Investor Group's willingness to drop the claims of the preferred stockholders from its Consolidated Amended Complaint, without notice, overcomes the presumption that the plaintiff that suffered the greatest financial loss should serve as lead plaintiff."); *Borenstein v. Finova Grp. Inc.*, 2000 WL 34524743, at *8 (D. Ariz. Aug. 30, 2000) (finding that challengers "cannot qualify" as the presumptive lead plaintiff because they "have consistently objected to being burdened with the claims of the note purchasers" and "would pose a significant risk that the complete interests of all class members would not be fairly and adequately protected").

Case No. 9:23-cv-80833-Civ-CANNON/REINHART

225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
kdouglas@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead Plaintiff

VANOVERBEKE, MICHAUD & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel

- 11 -