# EXHIBIT D

FEDERAL ELECTION COMMISSION

In the matter of:

> Grow United, Inc.                                                        MUR ____
> The Center for Advancement of Integrity and Justice, Inc.
> Florida Promise, Inc.
> Richard Alexander, Chairman, Grow United, Inc., President, the Center for Advancement
> > of Integrity and Justice, Inc., and Chairman, Florida Promise, Inc.,
> > in his official capacities as treasurer and in his personal capacity
> Wingman PAC
> Abby Dupree, Treasurer, Wingman PAC,
> > in her official capacity as treasurer and in her personal capacity
> American Valor PAC
> Lisa Lisker, Treasurer, American Valor PAC,
> > in her official capacity as treasurer and in her personal capacity
> Senate Leadership Fund
> Caleb Crosby, Treasurer, Senate Leadership Fund,
> > in his official capacity as treasurer and in his personal capacity
> Broken Promises
> Stand Up for Justice
> Sean Jason Anderson, Chairman, Broken Promises, and Board President, Stand Up for
> > Justice,
> > in his official capacities as treasurer and in his personal capacity
> Concerned Conservatives, Inc.
> Nancy H. Watkins, Treasurer, Concerned Conservatives, Inc.,
> > in her official capacity as treasurer and in her personal capacity
> South Florida Residents First
> Paul Kilgore, Treasurer, South Florida Residents First,
> > in his official capacity as treasurer and in his personal capacity
> Unknown Respondents

## COMPLAINT

1.      Citizens for Responsibility and Ethics in Washington ("CREW") brings this

complaint before the Federal Election Commission ("FEC" or "Commission") seeking an

immediate investigation and enforcement action against Grow United, Inc., the Center for

Advancement of Integrity and Justice, Inc., Florida Promise, Inc., Richard Alexander, Wingman

PAC, Abby Dupree, American Valor PAC, Lisa Lisker, Senate Leadership Fund, Caleb Crosby,

1

Broken Promises, Stand Up for Justice, Sean Jason Anderson, Concerned Conservatives, Inc., Nancy H. Watkins, South Florida Residents First, Paul Kilgore, and Unknown Respondents for direct and serious violations of the Federal Election Campaign Act ("FECA").

2.      The FECA prohibits making and knowingly accepting a contribution in the name of another person, as well as knowingly permitting one's name to be used to effect a contribution in the name of another person. Nevertheless, political consultants who appear to have controlled a network of nonprofit organizations pitched one or more clients on their ability to funnel money through nonprofits as part of a funding structure that could be used, among other things, to make federal campaign contributions while evading public reporting, in violation of these prohibitions on straw donations. Seemingly fulfilling that unlawful scheme, five nonprofits tied to the consultants made contributions totaling $1.27 million to federally registered super PACs in 2020.

3.      According to records obtained by the *Orlando Sentinel*, in November 2019, Jeff Pitts, who was then working for a consulting firm called Matrix, LLC, sent the CEO and President of Florida Power & Light, Eric Silagy, two memoranda about money in politics, one of which described a proposed "structure for funding 2020 activities" while the other discussed legalities related to "federal elections support." The funding memo, which named minimizing public reporting as one of its goals, included a flowchart depicting how the company's money could move through several layers of corporate entities, particularly nonprofit organizations, before being used to fund "political activities" on both the state and federal level. The legal memo warned that nonprofits that directly made independent expenditures to support a federal candidate may be required to disclose their donors and "[t]hus" recommended that "it could be strategic for a [nonprofit] who wishes to make Independent Expenditures to do so via a Super

2

PAC." The effect of this scheme would be to illegally hide the identities of the true source or sources of contributions by routing contributions through conduit nonprofits to super PACs, which would ultimately fund electioneering activities.

4.      As the *Orlando Sentinel* noted in its reporting on the memos, nonprofits apparently controlled by consultants once employed by Matrix, LLC, including Pitts or those who worked with him (the "Conduit Consultants"), subsequently made several donations to federal super PACs in 2020 in an apparent effort to carry out the scheme described in the 2019 memoranda. Matrix later asserted the Conduit Consultants were operating without the firm's knowledge or authorization.

5.      Accordingly, there is reason to believe (1) that an Unknown Respondent or Unknown Respondents, which may include corporations like Florida Power & Light, knowingly made contributions in the name of another to Wingman PAC, American Valor PAC, Senate Leadership Fund, Concerned Conservatives, Inc., and South Florida Residents First, (2) that the recipient entities knowingly accepted such contributions while falsely reporting they were made by conduit nonprofits apparently controlled by the Conduit Consultants, namely Grow United, Inc., the Center for Advancement of Integrity and Justice, Inc., Florida Promise, Inc., Broken Promises, and Stand Up for Justice, and (3) that the conduit nonprofits knowingly permitted their names to be used to effect a contribution in the name of another by permitting the contributions to be falsely attributed to them. These apparent violations of the law deprive the public of important information and demand investigation.

<u>Complainants</u>

6.      Complainant CREW is a non-profit corporation, organized under section

3

501(c)(3) of the Internal Revenue Code. CREW is committed to protecting the right of citizens to be informed about the activities of government officials, to ensuring the integrity of government officials, protecting our political system from corruption, and reducing the influence of money in politics. CREW is dedicated to empowering voters to have an influential voice in government decisions and in the governmental decision-making process. CREW uses a combination of research, litigation, and advocacy to advance its mission.

7.      In furtherance of its mission, CREW seeks to expose unethical and illegal conduct of those involved in government. One way that CREW does this is by educating citizens regarding the integrity of the electoral process and our system of government. Toward this end, CREW monitors the campaign finance activities of those who run for federal and state office and those who support or oppose such candidates and publicizes those who violate federal campaign finance laws through its website, press releases, and other methods of distribution. CREW also files complaints with the FEC when it discovers violations of the FECA. Publicizing campaign finance violators and filing complaints with the FEC serve CREW's mission of keeping the public informed about individuals and entities that violate campaign finance laws and deterring future violations of campaign finance law.

8.      In order to assess whether an individual, candidate, political committee, or other regulated entity is complying with federal campaign finance law, CREW needs the information contained in receipts and disbursements reports that political committees and others must file pursuant to the FECA, 52 U.S.C. § 30104; 11 C.F.R. §§ 104.1–22, 109.10. CREW is hindered in its programmatic activity when an individual, candidate, political committee, or other regulated entity fails to disclose or provides false information in reports required by the FECA.

4

9.      CREW relies on the FEC's proper administration of the FECA's reporting requirements because the FECA-mandated disclosure reports are the only source of information CREW can use to determine if an individual, candidate, political committee, or other regulated entity is complying with the FECA. The proper administration of the FECA's reporting requirements includes mandating that all disclosure reports required by the FECA are properly and timely filed with the FEC. CREW is hindered in its programmatic activity when the FEC fails to properly administer the FECA's reporting requirements.

<u>Respondents</u>

*Conduit Respondents*

10.     Grow United, Inc. is a tax-exempt organization formed in Delaware in July 2019. Grow United, Inc., Delaware Department of State: Division of Corporations, Entity Details, https://bit.ly/3t5moxi. Grow United is at the center of the so-called "ghost" candidate scandal in Florida, where the organization funded mailers promoting third party candidates who did little campaigning of their own and appear to have been encouraged to run in an effort to siphon votes from Democratic candidates in state Senate races. Jason Garcia and Annie Martin, <u>Florida's dark money playbook: How 'ghost' candidate scheme revealed secretive political tactics</u>, *Orlando Sentinel*, Dec. 30, 2021, https://bit.ly/32Ugwfu. According to records obtained by the *Orlando Sentinel*, the nonprofit was set up and controlled by the Conduit Consultants. Jason Garcia and Annie Martin, <u>Florida Power & Light execs worked closely with consultants behind 'ghost' candidate scheme, records reveal</u>, *Orlando Sentinel*, Dec. 2, 2021, https://bit.ly/32V026r. There are currently no publicly available tax returns filed by Grow United, but its address and tax

5

identification number are available in the tax return of another organization that provided it a grant. Florida Watch Inc., 2020 Form 990, Schedule I, https://bit.ly/3G4LVu6.

     11.     The Center for Advancement of Integrity and Justice, Inc. is or was a tax-exempt organization formed in Delaware in October 2018. The Center for Advancement of Integrity and Justice, Inc., Delaware Department of State: Division of Corporations, Entity Details, https://bit.ly/3q0bSnS. There are currently no publicly available tax returns filed by the Center for Advancement of Integrity and Justice, Inc., and the Internal Revenue Service automatically revoked the organization's tax-exempt status in May 2021 due to the group's failure to file a Form-990 series return or notice for three consecutive years. Center for Advancement of Integrity and Justice, Inc., Auto-Revocation List, Tax Exempt Organization Search, Internal Revenue Service, https://bit.ly/3L5mI4F.

     12.     Florida Promise, Inc. is a tax-exempt organization formed in Delaware in December 2018. Florida Promise, Inc., Delaware Department of State: Division of Corporations, Entity Details, https://bit.ly/3JPH3LJ; Florida Promise, Inc., 2018 Form 990-EZ, https://bit.ly/32bdv9H.

     13.     Richard Alexander is, and at all relevant times was, the chairman of Grow United, Inc., Jason Garcia and Annie Martin, Chair of dark-money group in Florida's 'ghost' candidate scandal has ties to other secretive groups, *Orlando Sentinel*, Aug. 26, 2021, https://bit.ly/3yweGwR, president of the Center for Advancement of Integrity and Justice, Inc., Jason Garcia, Twitter, Oct. 24, 2021, https://bit.ly/3F84Pja, and chairman of Florida Promise, Inc., Florida Promise, Inc., 2018 Form 990-EZ. Mr. Alexander's sister, April Odom, is one of the Conduit Consultants who helped set up and control Grow United, and Mr. Alexander also serves

as an officer of additional nonprofits connected to the consultants. Jason Garcia and Annie Martin, <u>Dark money behind Florida 'ghost' candidates has ties to Alabama political players, records suggest</u>, *Orlando Sentinel*, Aug. 5, 2021, <u>https://bit.ly/3e05w20</u>; Garcia and Martin, <u>Chair of dark-money group</u>; Center for Popular Progressive Values and Democracy Inc, 2018 Form 990, <u>https://bit.ly/3E3gOgv</u>. Prosecutors in Florida have sent Mr. Alexander a "prior to" letter related to the investigation of the "ghost" candidate scandal, suggesting that he may be a target of an investigation.[1] Annie Martin and Jason Garcia, <u>Operatives tied to 'ghost' candidate scheme told they're targets of Miami prosecutors</u>, *Orlando Sentinel*, Jan. 5, 2022, <u>https://bit.ly/3rZQC3F</u>.

14.    Broken Promises was a tax-exempt organization formed in Washington, DC in August 2018. Broken Promises, Initial File Number: N00006066042, Washington, DC Department of Consumer and Regulatory Affairs, <u>https://bit.ly/3F2LUW6</u>; Broken Promises, 2018 Form 990, <u>https://bit.ly/3bpNsw7</u>. Broken Promises, which terminated in 2020, appears to have shut down soon after CREW filed a complaint with the IRS against the organization regarding its high level of political activity in 2018. Broken Promises, 2020 Form 990-N, <u>https://bit.ly/3qRTMVl</u>; Broken Promises, Initial File Number: N00006066042, Washington, DC Department of Consumer and Regulatory Affairs; Letter from Noah Bookbinder and Matt Corley to the Honorable Charles P. Rettig, Dec. 17, 2020, <u>https://bit.ly/3t5PwEr</u>; Mary Ellen Klas, Nicholas Nehamas, and Ana Claudia Chacin, <u>'Nightmare scenario': How FPL secretly manipulated a Florida state Senate election</u>, *Miami Herald*, Aug. 29, 2022,

---

[1] According to the *Orlando Sentinel*, H. Scott Fingerhut, a law professor and former prosecutor in the Miami-Dade State Attorney's Office, explained that a "prior to" sent by the State Attorney's office is an "investigative tool" that "typically alerts someone they are the target of an investigation and gives them the chance to sit for an interview with prosecutors." Martin and Garcia, <u>Operatives tied to 'ghost' candidate scheme told</u>.

https://bit.ly/3VoQRlk (reporting Broken Promises filed for dissolution two weeks after the complaint).

15.     Stand Up for Justice was a tax-exempt organization formed in Washington, DC in August 2018. Stand Up for Justice, Initial File Number: N00006066111, Washington, DC Department of Consumer and Regulatory Affairs, https://bit.ly/3HDQ88o; Stand Up for Justice, 2018 Form 990, https://bit.ly/3lXURYC. Stand Up for Justice and Broken Promises appear to be highly similar organizations that formed on the same day in 2018, shared the same board, and used the same accounting firm to prepare its tax returns. *Compare* Broken Promises, Initial File Number: N00006066042, Washington, DC Department of Consumer and Regulatory Affairs; Broken Promises, 2018 Form 990 *to* Stand Up for Justice, Initial File Number: N00006066111, Washington, DC Department of Consumer and Regulatory Affairs; Stand Up for Justice, 2018 Form 990. Stand Up for Justice terminated in 2020 and appears to have shut down soon after CREW mentioned the organization in a complaint filed with the IRS against Broken Promises. Stand Up for Justice, 2020 Form 990-N, https://bit.ly/32Vikoy; Stand Up for Justice, Initial File Number: N00006066111, Washington, DC Department of Consumer and Regulatory Affairs; Letter from Noah Bookbinder and Matt Corley to the Honorable Charles P. Rettig, Dec. 17, 2020.

16.     Sean Jason Anderson was at all relevant times the president and chairman of the board of directors of Broken Promises, Broken Promises, 2018 Form 990; Annie Martin and Jason Garcia, PAC activity in 2020 'ghost' candidate race mirrored tactics in '18 Gainesville-area election, *Orlando Sentinel*, Aug. 18, 2021, https://bit.ly/3eV6oFI, and board president of Stand Up for Justice, Stand Up for Justice, 2018 Form 990. According to the *Orlando Sentinel*,

"tax, corporate and court records show that Broken Promises is run by Sean Jason Anderson of Birmingham, Ala. and Alabama lobbying records from 2011 show there is a Jason Anderson who used to work in Matrix LLC's Birmingham office." *Id*.; Alabama Ethics Commission, Lobbyist Registration Statement, 2011, Anderson, Jason, https://bit.ly/3t2jqtq; John Archibald, Archibald: 'Bachelor party' makes for strange bedfellows, *AL.com*, Nov. 14, 2010, https://bit.ly/3qTmZiQ.  The *Miami Herald* reported that Mr. Pitts texted a Florida Power & Light executive in 2016 that Mr. Anderson was an old friend of Mr. Pitts, and that Mr. Pitts and his associates were "the ones with the check books and in control 100 percent" of nonprofits purportedly run by Mr. Anderson and another associate. Nicholas Nehamas and Mary Ellen Klas, DeSantis '18 campaign got $25,000 from nonprofit secretly funded by FPL cash, records show, *Miami Herald*, Sept. 9, 2022, https://bit.ly/3CSOlgf; Klas, Nehamas, and Chacin, 'Nightmare scenario': How FPL secretly manipulated a Florida state Senate election.

*Recipient PAC and Treasurer Respondents*

17.     Wingman PAC is a federally registered independent expenditure-only committee ("super PAC") formed under FECA in March 2020. Wingman PAC, FEC Form 1, Statement of Organization, Mar. 16, 2020, https://bit.ly/3HDxEos.

18.     Abby Dupree is, and at all relevant times was, treasurer of Wingman PAC. Wingman PAC, FEC Form 3X, 2020 Post-General Report, Dec. 3, 2020, https://bit.ly/3n22ZcL. Ms. Dupree is a managing partner of Carroll and Company and, according to the company's website, has "[e]xtensive experience in campaign finance compliance reporting with the State of Florida Division of Elections and the Federal Elections [sic] Commission." Carroll and Company, Abby F. Dupree, CPA, https://bit.ly/3HF3VLV.

19.     American Valor PAC was a federally registered super PAC formed under FECA in September 2020. American Valor PAC, <u>FEC Form 1, Statement of Organization</u>, Sept. 2, 2020, https://bit.ly/3GeLHRj. American Valor PAC terminated in December 2020. American Valor PAC, <u>FEC Form 3X, Termination Report</u>, Dec. 3, 2020, https://bit.ly/3t25pvO.

20.     Lisa Lisker was at all relevant times the treasurer of American Valor PAC. American Valor PAC, <u>FEC Form 3X, Termination Report</u>, Dec. 3, 2020. Ms. Lisker is the president of Huckaby Davis Lisker, Inc. and has worked with "hundreds of Senate and House campaigns, state party, joint fundraising and political action committees, serving as Treasurer for most." AAPC 2020 Annual Pollie Awards & Conference, Lisa Lisker, https://bit.ly/3y7eXYM.

21.     Senate Leadership Fund is a federally registered super PAC formed under FECA in January 2015. Senate Leadership Fund, <u>FEC Form 1, Statement of Organization</u>, Jan. 20, 2015, https://bit.ly/3HGJXjX.

22.     Caleb Crosby is, and at all relevant times was, treasurer of Senate Leadership Fund. Senate Leadership Fund, <u>FEC Form 3X, 2020 Year End Report, Amended</u>, Mar. 18, 2021, https://bit.ly/337G4FQ. Mr. Crosby has served as the treasurer for dozens of committees registered with the FEC. Committees, Most Recent Treasurer, "crosby, caleb," Federal Election Commission, https://bit.ly/3HBfvYm.

23.     Concerned Conservatives, Inc. is a federally registered super PAC formed under FECA in November 2019. Concerned Conservatives, Inc., <u>FEC Form 1, Statement of Organization</u>, Nov. 22, 2019, https://bit.ly/3eSWJ2e.

24.     Nancy H. Watkins is, and at all relevant times was, the treasurer of Concerned Conservatives, Inc. *Id*.; Concerned Conservatives, Inc., <u>FEC Form 3X, 2020 Pre-Primary Report</u>,

Aug. 6, 2020, https://bit.ly/3n17UdJ. Ms. Watkins is an accountant who is known as "the go-to treasurer for hundreds of Republican candidates and political groups around [Florida] and [the] country." Florida 500, Professional Services, Nancy Watkins, https://bit.ly/3JO0dRV.

25.    South Florida Residents First is a federally registered super PAC formed under FECA in January 2020. South Florida Residents First, <u>FEC Form 1, Statement of Organization</u>, Jan. 6, 2020, https://bit.ly/3n38DuV.

26.    Paul Kilgore is, and at all relevant times was, treasurer of South Florida Residents First. South Florida Residents First, <u>FEC Form 3X, 2020 April Quarterly Report</u>, Apr. 15, 2020, https://bit.ly/3qWXm0j. Mr. Kilgore has served as the treasurer for hundreds of committees registered with the FEC. Committees, Most Recent Treasurer, "kilgore, paul," Federal Election Commission, https://bit.ly/3Gi08Ed.

<em>True Source or Sources Unknown Respondents</em>

27.    Unknown Respondents are the person or persons, natural or corporate, who are the true source or sources of contributions to Wingman PAC, American Valor PAC, Senate Leadership Fund, Concerned Conservatives, and South Florida Residents First that were falsely attributed to conduit entities Grow United, the Center for Advancement of Integrity and Justice, Florida Promise, Broken Promises, and Stand Up for Justice.

<u>Factual Allegations</u>

<em>Leaked Documents Reveal Conduit Consultants' Apparent Control and Use of Nonprofits</em>

28.    In December 2021, the <em>Orlando Sentinel</em> first reported on a "cache" of documents detailing a close working relationship between top executives at the utility company Florida Power & Light and consultants that previously worked for the Alabama-based political and

11

communications consulting firm Matrix, LLC. Garcia and Martin, <u>Florida Power & Light execs</u> <u>worked closely with consultants</u>. The documents included "checks, bank statements, emails, text messages, invoices, internal ledgers and more covering a roughly four-year period between 2016 and 2020, all of which were apparently unearthed during an internal investigation" by Matrix. *Id.* The records and a summary of the internal Matrix investigation that proclaimed to have unearthed "potential unlawful conduct" were also sent to the chairman of Florida Power & Light's parent company, NextEra Energy, Inc., in November 2021. *Id.*  On a January 2022 earnings call, NextEra Chairman Jim Robo indicated that the company conducted an internal investigation after receiving the report and said it "found no evidence of any issues at all, any illegality or any wrongdoing on the part of FPL or any of its employees." Motley Fool Transcribing, <u>NextEra Energy (NEE) Q4 2021 Earnings Call Transcript</u>, *The Motley Fool*, Jan. 25, 2022, https://bit.ly/3vP6xUn; Nate Monroe, <u>Nate Monroe: NextEra, would-be JEA buyer,</u> <u>says internal investigation finds no wrongdoing by company</u>, *Florida Times-Union*, Jan. 25, 2022, https://bit.ly/3yhQ10G.

29.     The cache presents a credible record of a scheme to violate the FECA orchestrated by the Conduit Consultants. The *Orlando Sentinel* "independently corroborated dozens of details in the records" and a spokesperson for Florida Power & Light "did not dispute" details of the documents in response to questions from *Orlando Sentinel* reporters. *Id.* Instead, the spokesperson, David Reuter, appeared to confirm the authenticity of the documents by only contesting the completeness of the picture presented in them and attributing them to a leak by a former consultant as part of "a legal dispute." *Id*. Mr. Reuter again declined to dispute the authenticity of the documents when he defended Florida Power & Light in an op-ed published

shortly after the initial public disclosure of the documents. David P. Reuter, <u>FPL: Spare us the outrage over contributions</u>, *Orlando Sentinel*, Dec. 9, 2021, <u>https://bit.ly/31nfpnL</u>.

30.     Among other things, the *Orlando Sentinel* reported that the documents showed how Florida Power & Light had "donated more than $10 million in recent years to other dark-money nonprofits controlled by" one or more of the Conduit Consultants, and that Mr. Silagy, the CEO and president of Florida Power & Light, had "personally coordinated with those consultants on campaign contributions made through their nonprofits." Garcia and Martin, <u>Florida Power & Light execs worked closely with consultants</u>. In addition, according to the *Florida Times-Union*, which was given access to the cache of documents by the *Orlando Sentinel*, "the summary of Matrix's internal investigation alleges that, beginning in 2016, the firm's former employees created at least 19 different entities to use as vehicles for dark-money political contributions." Nate Monroe, <u>Law firm that advised on botched JEA sale also helped former FPL consultants on dark-money projects</u>, *Florida Times-Union*, Dec. 17, 2021, <u>https://bit.ly/3LShcDW</u>.

*A Funding Structure for Corporate Political Contributions that Minimizes Disclosure*

31.     The cache of documents included a pair of memos that Mr. Pitts, one of the Conduit Consultants who was still then the CEO of Matrix, LLC, sent by email on November 26, 2019 to a pseudonymous email address that used the name "Theodore Hayes," but the true recipient of the email was Florida Power & Light President and CEO Silagy. Jason Garcia and Annie Martin, <u>Operatives pitched secretive political spending plan to FPL exec's email alias, records reveal</u>, *Orlando Sentinel*, Dec. 17, 2021, <u>https://bit.ly/3nkbMHc</u>; NextEra Energy, Inc. Florida Power & Light Company, Form 10-K Annual Report for Year Ending Dec. 31, 2021,

United States Securities and Exchange Commission, Feb. 12, 2022, https://bit.ly/3uooJ5c.
Florida Power & Light was one of Matrix's clients at the time and confirmed to the *Orlando
Sentinel* that the "Theodore Hayes" email account belonged to Mr. Silagy and was set up for him
by the consulting firm. Garcia and Martin, <u>Operatives pitched secretive political spending plan</u>.

32.     In the November 2019 email, Mr. Pitts wrote, "Attached is an updated funding
memo along with a separate legal memo on federal elections support." Garcia and Martin,
<u>Operatives pitched secretive political spending plan</u>. According to the *Orlando Sentinel*, the
memos "laid out a proposal, written with help from one of Florida's top law firms, for how
[Florida Power & Light] money could be filtered through a network of companies and nonprofits
that would then make campaign contributions to politicians in Florida and around the country.
One of the chief goals was secrecy." *Id*. One of the attached memos, which appears to have been
written by Mr. Pitts (the "Pitts Memo"), described, in its own words, a plan to "develop a
structure for funding 2020 activities — advertising, research, consulting, [nonprofit] donations,
and campaign contributions to groups or individuals where laws allow." *Id.* The Pitts Memo
identified five goals, including funding both state and federal-level campaign contributions as
well as a desire to "minimize all public reporting of entities and activities." *Id*.

14

33.    The Pitts Memo included a flowchart, copied here.



Garcia and Martin, Operatives pitched secretive political spending plan, ("*fig. 1*").

34.    The Pitts Memo flowchart, *see fig. 1*, laid out how money originating from

Florida Power & Light could flow through a series of conduit entities before being used to make

15

political contributions. *Id*. The memo depicted money first flowing from Florida Power & Light to a company called Sun Marketing & Advertising, which is described as "an LLC filed in Delaware requiring one individual & no public disclosure of that individual's name." *Id*. The *Orlando Sentinel* noted that on December 13, 2019, about two weeks after the Pitts Memo was sent to Mr. Silagy, a company called SUN Marketing & Advertising was incorporated in Delaware. *Id.*; Sun Marketing & Advertising, LLC, Delaware Department of State: Division of Corporations, Entity Details, https://bit.ly/3GnSbgC. A spokesperson for Florida Power & Light also told the *Orlando Sentinel* that the power company had made one payment of $250,000 to Sun Marketing & Advertising in December 2019, but said the money was used to purchase advertising focused on a proposed constitutional amendment. Garcia and Martin, Operatives pitched secretive political spending plan. The Florida Power & Light spokesperson said the company believed that Sun Marketing & Advertising was owned by Matrix and that Florida Power & Light was not involved in the establishment of the Delaware-based LLC. *Id*.

35.     According to the flowchart in the Pitts Memo, *see fig. 1*, and the *Orlando Sentinel* story describing it, "the memo depicted money flowing from" Sun Marketing & Advertising to an "existing ad agency" and an entity identified as "LPAD C4 (Tyson)," which the *Orlando Sentinel* identified as a nonprofit organization called Let's Preserve the American Dream "controlled by a longtime political advisor" to a business lobbying group. Garcia and Martin, Operatives pitched secretive political spending plan. The executive director of Let's Preserve the American Dream is named Ryan Tyson. Let's Preserve the American Dream Inc., 2018 Form 990, https://bit.ly/31SCMpD.

36.     According to the *Orlando Sentinel*, in the flowchart, "[m]oney then flowed from that nonprofit to several other nonprofits, which were controlled by Matrix and would then make campaign contributions." Garcia and Martin, <u>Operatives pitched secretive political spending plan</u>. The other nonprofits on the flowchart are all seemingly identified as exempt from taxation under section 501(c)(4) of the tax code. *Id.*; *see fig. 1.*

37.     Directly below Let's Preserve the American Dream on the flowchart is a group labeled "Broken Promises C4 (Matrix/Foley)." *See id.* Below that are three other groups labeled "Florida Promise C4 (Matrix/Foley)," "US Promise C4 (Matrix/Foley)," and "Fed Promise C4 (Matrix/Foley)." *Id.* On the flowchart, below the entry for Florida Promise C4, a text box suggested that the nonprofit could be used for political contributions in Florida, stating that "C4s are allowed to spend 50% of revenues on political activities. Florida PCs are allowed to take unlimited funds from C4s." *Id.* "PC" is common shorthand in Florida for "political committee" and many political action committees registered in the state include "PC" in their name. *See, e.g.*, Florida Department of State, Committee Database Search, Search Committees by Name, Search Type Containing "PC," <u>https://bit.ly/3v7jXLo</u>. Likewise, a text box under the US Promise C4 entry noted, "C4s are allowed to spend 50% of revenues on political activities. Each state operates under unique state elections." *See fig. 1.* The text box under the Fed Promise C4 entry simply stated: "Waiting on lawyers." *Id.*

38.     The second memo attached to Mr. Pitts' November email appears to provide the information missing from the text box below Fed Promise C4. The memo was written by Erika Alba ("Alba Memo"), a political law attorney and public affairs director with Foley & Lardner LLP. Garcia and Martin, <u>Operatives pitched secretive political spending plan</u>; Foley & Lardner

LLP, People, Erika E. Alba, https://bit.ly/33erxZd. In her memo, according to the *Orlando Sentinel*, Ms. Alba "explained the legalities of using nonprofits to spend money on federal elections" while warning that "a nonprofit might have to disclose its donors if it spent money directly supporting a candidate." Garcia and Martin, Operatives pitched secretive political spending plan. Ms. Alba noted, however, that a nonprofit would not face the same risk of donor disclosure if it gave money to a super PAC that then spent the money supporting a candidate. *Id*. "'Thus, it could be strategic for a [nonprofit] who wishes to make Independent Expenditures to do so via a Super PAC,' Alba wrote." *Id*.

39.     A spokesperson for Florida Power & Light seemingly confirmed the authenticity of the proposal obtained by the *Orlando Sentinel*, saying, "We are aware of the proposed structure as the legal memo was shared with us" but suggested the company did not utilize it, saying "[n]either FPL nor Eric Silagy requested Matrix to set up any proposed funding structure for 501C(4) organizations and we had no knowledge of this structure being used by Matrix." *Id*. Mr. Reuter, however, has elsewhere indicated that Florida Power & Light and its executives have provided financial support to nonprofits that support political candidates. Reuter, FPL: Spare us the outrage.

40.     While casting doubt on whether Florida Power & Light utilized the funding structure proposed in the Pitts Memo, Mr. Reuter suggested that a similar proposal may have been provided to other Matrix clients, saying, "Joe Perkins' team at Matrix created a proposal to fund their clients' communication and outreach activities during 2020." Garcia and Martin, Operatives pitched secretive political spending plan. Dr. Joseph Perkins is the founder and principal of Matrix, LLC and, as discussed below, the two were in litigation with a number of the

Conduit Consultants, including Mr. Pitts, as well as Mr. Pitts' new firm Canopy Partners, LLC ("Canopy Partners"). Kent Faulk, <u>Alabama political crisis management company Matrix sues former employees</u>, *AL.com*, Sept. 9, 2021, <u>https://bit.ly/329T9xA</u>; John Archibald, <u>Archibald: Unveiling political dark arts in Alabama and Florida is critical to the republic</u>, *AL.com*, Sept. 8, 2021, <u>https://bit.ly/3v3XNKa</u>. An attorney representing Matrix told the *Orlando Sentinel* that neither Dr. Perkins nor any of his remaining employees were involved with the proposal Mr. Pitts presented to Mr. Silagy, blaming "rogue" ex-employees instead. Garcia and Martin, <u>Operatives pitched secretive political spending plan</u>.

41.     As explained below, during the 2020 election the Unknown Respondents, who may or may not include Florida Power & Light, appear to have used a version of the funding structure laid out in the Pitts Memo to channel contributions to federally-registered super PACs through nonprofits connected to the Conduit Consultants in order to evade public disclosure of the true source of the funds. As the *Orlando Sentinel* noted in its reporting on the Pitts and Alba Memos, "Matrix-related nonprofits" made "several donations to federal Super PACs," the details of which match the contributions described below. *Id*.

*Conduit Consultant-Affiliated Nonprofits Contribute to Super PACs in 2020*

42.     In 2020, a series of nonprofits seemingly controlled by the Conduit Consultants made contributions to super PACs in a manner consistent with the scheme laid out in the Pitts Memo, including using entities identified in the memo. Specifically, the nonprofits contributed a total of $1.27 million to super PACs through five channels: (1) Grow United contributed funds to Wingman PAC, (2) the Center for Advancement of Integrity & Justice contributed funds to American Valor PAC, (3) Florida Promise contributed funds to the Senate Leadership Fund,

(4) Broken Promises contributed funds to Concerned Conservatives, Inc., and (5) Stand Up for

Justice contributed funds to South Florida Residents First. These contributions are consistent

with the scheme laid out in the Pitts Memo, and the close ties of the groups involved with the

author of the Pitts Memo and other Conduit Consultants gives rise to a reason to believe the

transactions represent unlawful passthrough contributions in the name of another. *See fig. 2*

(visual summary of cash flows in nonprofit conduit scheme).



*Fig. 2.*

<u>*Grow United*</u>

43.     On October 27, 2020, Grow United transferred $100,000 to Wingman PAC, a

single-candidate super PAC that spent more than $337,000 on independent expenditures

benefiting Scott Franklin in the race for Florida's 15th congressional seat. Wingman PAC, <u>FEC</u>

21

Form 3X, 2020 Post-General Report, Dec. 3, 2020, https://bit.ly/3n22ZcL; Wingman PAC, Independent Expenditures, 2019-2020, Federal Election Commission, https://bit.ly/3y6xCUH; Peter Schorsch, Wingman PAC drops pro-Scott Franklin ad blasting Alan Cohn as tax and spend liberal, *Florida Politics*, Oct. 28, 2020, https://bit.ly/3BKJWtq. Grow United's contribution was the single largest contribution the super PAC received during the two-year 2020 election cycle. Wingman PAC, Receipts, 2019-2020, Federal Election Commission, https://bit.ly/351b4Zj.

44.     Grow United is controlled by the Conduit Consultants. Based on the records it obtained, the *Orlando Sentinel* reported that the nonprofit was set up and controlled by Conduit Consultants, including Mr. Pitts, and described the Conduit Consultants' involvement in Grow United's operations. Garcia and Martin, Florida Power & Light execs worked closely with consultants; Garcia and Martin, Florida's dark money playbook; *see also* Jason Garcia and Annie Martin, Big-business-linked group funded 'ghost' candidate ads, records show, *Orlando Sentinel*, Jan. 18, 2022, https://bit.ly/3Mav2lh. In addition, at all relevant times, Grow United's chairman was Richard Alexander, who is also chairman of a nonprofit group that appeared in the Pitts Memo, Florida Promise, and whose sister April Odom is one of the Conduit Consultants who set up and controlled Grow United. Garcia and Martin, Chair of dark-money group.

45.     In 2020, Grow United also received funding from one of the intermediary nonprofits listed in the Pitts Memo's funding structure flowchart. According to tax records obtained by the *Orlando Sentinel*, Let's Preserve the American Dream provided $1.15 million to Grow United in 2020. Jason Garcia and Annie Martin, Big business-linked group gave over $1 million to dark-money entity promoting 'ghost' candidates, *Orlando Sentinel*, Nov. 18, 2021, https://bit.ly/3HglNME; Garcia and Martin, Operatives pitched secretive political spending plan;

*see fig. 1*. Records obtained by the *Orlando Sentinel* and testimony from Mr. Tyson, the executive director of Let's Preserve the American Dream, show that $600,000 of the $1.15 million Let's Preserve the American Dream gave to Grow United was effectively earmarked to pass on to political committees to pay for the mailers that promoted the "ghost" candidates in Florida state Senate races, with Mr. Tyson both ordering Let's Preserve the American Dream's transfer to Grow United and telling representatives of the nonprofit to expect a request for a donation from the political operative who ran the Florida political committees that Grow United subsequently funded. Garcia and Martin, Florida Power & Light execs worked closely with consultants; Garcia and Martin, Big-business-linked group funded 'ghost' candidate ads, records show.

46.     Grow United participated in other state-level conduit schemes as well, as indicated in the records obtained by the *Orlando Sentinel* as well as information produced by the Florida state investigation into the "ghost" candidate scandal. Garcia and Martin, Florida Power & Light execs worked closely with consultants; Jason Garcia and Annie Martin, Dems gave $700K to dark-money group that helped Republicans win races in 'ghost' candidate scandal, *Orlando Sentinel*, Sept. 9, 2021, https://bit.ly/3BONzyF; Jeff Weiner, Annie Martin, and Jason Garcia, Interviews examine Artiles' boasts about 'ghost' candidate scheme, funding for dark-money group, *Orlando Sentinel*, Nov. 17, 2021,  https://bit.ly/3hjGpZD; Ana Ceballos and Samantha J. Gross, Florida Democrats also used dark money group that paid for sham candidate mailers, *Tampa Bay Times*, Nov. 19, 2021, https://bit.ly/3hwaQMd.

*The Center for Advancement of Integrity and Justice*

47.     On October 27, 2020, the Center for Advancement of Integrity and Justice transferred $100,000 to American Valor PAC, a single-candidate super PAC that spent more than $286,000 on independent expenditures benefiting candidate Anna Paulina Luna in the race for Florida's 13th congressional district. American Valor PAC, FEC Form 3X, Termination Report, Dec. 3, 2020, https://bit.ly/3t25pvO; American Valor PAC, Independent Expenditures, 2019-2020, Federal Election Commission, https://bit.ly/3IeEmlB; Daniel Molina, Crist Called "one of Florida's Least Effective Congressmen", *The Floridian*, Oct. 2, 2020, https://bit.ly/3JS8yUa. The Center for Advancement of Integrity and Justice's contribution was the single largest contribution the super PAC received during the two-year 2020 election cycle. American Valor PAC, Receipts, 2019-2020, Federal Election Commission, https://bit.ly/3JMWP9c.

48.     There is reason to believe the Center for Advancement of Integrity and Justice was controlled by the Conduit Consultants. At all relevant times, the president of the Center for Advancement of Integrity of Justice was Mr. Alexander, who was also chair of Grow United, an entity that participated in state-level conduit schemes, and chairman of an entity that appears on the Pitts Memo, Florida Promise. Garcia and Martin, Chair of dark-money group; Garcia, Twitter, Oct. 24, 2021. Further, Mr. Alexander's sister, Ms. Odom, is one of the Conduit Consultants who set up and controlled Grow United, and text message obtained by the *Orlando Sentinel* confirmed that Ms. Odom had access to banking information for both Grow United and the Center for Advancement of Integrity and Justice. Garcia and Martin, Florida's dark money playbook; *see also* https://bit.ly/3vc9ZIF.

24

*Florida Promise*

49.     On December 8, 2020, Florida Promise transferred $1 million to the Senate

Leadership Fund, a federal super PAC with ties to Senate Minority Leader Mitch McConnell (R-

KY) that spent more than $293 million on independent expenditures benefiting Republicans

seeking to defend or win Senate seats in 2020. Senate Leadership Fund, <u>FEC Form 3X, 2020</u>

<u>Year-End Report, Amended</u>, Mar. 18, 2021, <u>https://bit.ly/337G4FQ</u>; Senate Leadership Fund,

Independent Expenditures, 2019-2020, Federal Election Commission, <u>https://bit.ly/3sg1AC8</u>;

Lachlan Markay, <u>Late "dark money" flooded key Senate races</u>, *Axios*, Feb. 5, 2021,

<u>https://bit.ly/36Iog61</u>; Garcia and Martin, <u>Chair of dark-money group</u>.

50.     There is reason to believe Florida Promise was controlled by the Conduit

Consultants. As noted above, one of the entities described in the Pitts Memo funding structure

flowchart was labeled "Florida Promise C4," and the flowchart suggested it was a vessel for

making conduit contributions to Florida state political committees. Garcia and Martin,

<u>Operatives pitched secretive political spending plan</u>; *see fig. 1.* Florida Promise made

contributions to Florida state political committees both before and after the Pitts Memo was sent

to Mr. Silagy. *See* Contributions Query Results, Election Year: All, With Payee Last Name Starts

With: florida promise, Division of Elections, Florida Department of State,

<u>https://bit.ly/3he3Gw9</u>; Florida First, Forever, Inc., Statement of Organization of Political

Committee, Division of Elections, Florida Department of State, June 30, 2016,

<u>https://bit.ly/3hbITcL</u>; Florida Republican Senatorial Campaign Committee, By-Laws of the

Florida Republican Senatorial Campaign Committee, Division of Elections, Florida Department

of State, Oct. 10, 2014, <u>https://bit.ly/2IHjcTD</u>. Additionally, at all relevant times, Mr. Alexander

was the chairman of Florida Promise, the chair of Grow United, an entity involved in state level

conduit contributions, and president of the Center for Advancement of Integrity and Justice. Mr.

Alexander's sister is one of the Conduit Consultants who set up and controlled Grow United.

Garcia and Martin, <u>Chair of dark-money group</u>.

<u>*Broken Promises*</u>

51.     On July 14, 2020, Broken Promises transferred $20,000 to Concerned

Conservatives, Inc., a single-candidate super PAC that spent more than $424,000 on independent

expenditures benefiting candidate Dane Eagle in the race for Florida's 19th congressional seat.

Concerned Conservatives, Inc., <u>FEC Form 3X, 2020 Pre-Primary Report</u>, Aug. 6, 2020,

<u>https://bit.ly/3n17UdJ</u>; Concerned Conservatives, Inc., Independent Expenditures, 2019-2020,

Federal Election Commission, <u>https://bit.ly/380ELez</u>; Jacob Ogles, <u>Club for Growth spends big</u>

<u>boosting Byron Donalds, bashing Casey Askar</u>, *Florida Politics*, July 28, 2020,

<u>https://bit.ly/3Iqnf0o</u>. Broken Promise's contribution was the fourth largest contribution received

by the super PAC in the two-year 2020 election cycle. Concerned Conservatives, Inc., Receipts,

2019-2020, Federal Election Commission, <u>https://bit.ly/3t9xcsw</u>.

52.     There is reason to believe Broken Promises was controlled by the Conduit

Consultants. As noted above, one of the entities described in the Pitts Memo funding structure

flowchart was labeled "Broken Promises." Garcia and Martin, <u>Operatives pitched secretive</u>

<u>political spending plan</u>; *see fig. 1*. In the flowchart, Broken Promises was stationed between

Let's Preserve the American Dream and other nonprofit entities. *Id*. Bank records obtained by

the Miami-Dade State Attorney's Office reveal that Let's Preserve the American Dream

provided Broken Promises $26,000 on July 9, 2020, just five days before Broken Promises made

26

its $20,000 contribution to Concerned Conservatives, Inc. Jeff Weiner and Annie Martin, <u>Bank records shed light on dark-money group in 'ghost' candidate scandal</u>, *Orlando Sentinel*, Apr. 18, 2022, https://bit.ly/3KJVal2. According to the *Orlando Sentinel*, some of the leaked records it received indicated that Broken Promises was controlled by the Conduit Consultants. Garcia and Martin, <u>Florida Power & Light execs worked closely with consultants</u>; Garcia and Martin, <u>PAC activity in 2020 'ghost' candidate race</u>. Additionally, Broken Promises was chaired by Mr. Anderson, an individual who Mr. Pitts identified as an old friend and who nominally ran one or more nonprofits Mr. Pitts stated were in actuality under "100 percent control" of Mr. Pitts and his associates. Nehamas and Klas, <u>DeSantis '18 campaign got $25,000 from nonprofit secretly funded by FPL cash, records show</u>; Klas, Nehamas, and Chain, <u>'Nightmare scenario': How FPL secretly manipulated a Florida state Senate election</u>.

### *Stand Up for Justice*

53.     On March 31, 2020, Stand Up for Justice transferred $50,000 to South Florida Residents First, a single-candidate super PAC that spent more than $656,000 on independent expenditures benefiting now-Rep. Carlos Gimenez in the race for Florida's 26th congressional seat. South Florida Residents First, <u>FEC Form 3X, 2020 April Quarterly Report</u>, Apr. 15, 2020, https://bit.ly/3qWXm0j; South Florida Resident First, Independent Expenditures, 2019-2020, Federal Election Commission, https://bit.ly/38ISLtk; Ryan Nicol, <u>From Dade to D.C.: Carlos Gimenez defeats Debbie Mucarsel-Powell</u>, *Florida Politics*, Nov. 3, 2020, https://bit.ly/36EWUgY; *See also* https://bit.ly/3sYMMXG. Stand Up for Justice's contribution was tied for the largest contribution received by the super PAC during the two-year 2020

27

election cycle. South Florida Residents First, Receipts, 2019-2020, Federal Election Commission, https://bit.ly/3IkUIcw.

54.     There is reason to believe Stand Up for Justice is controlled by the Conduit Consultants. At all relevant times, Sean Jason Anderson was the board president of Stand up for Justice, while also serving as president and chairman of Broken Promises. Martin and Garcia, PAC activity in 2020 'ghost' candidate race, an entity listed on the Pitts Memo, Garcia and Martin, Operatives pitched secretive political spending plan; *see fig. 1.* Additionally, Mr. Anderson was identified by Mr. Pitts as an old friend who nominally ran at least one nonprofit that Mr. Pitts stated were in actuality under "100 percent control" of Mr. Pitts and his associates. Nehamas and Klas, DeSantis '18 campaign got $25,000 from nonprofit secretly funded by FPL cash, records show; Klas, Nehamas, and Chain, 'Nightmare scenario': How FPL secretly manipulated a Florida state Senate election. Stand up for Justice also appeared to be a highly similar organization to Broken Promises, as it was founded the same day in 2018, shared the same board, and used the same accounting firm to prepare its tax returns.

*Matrix Alleges Conduit Consultants Operated Without the Firm's Knowledge or Authorization*

55.     While the Conduit Consultants were employed by Matrix during the period when the nonprofit organizations contributed to the super PACs, Matrix later alleged that they were operating without the firm's knowledge or authorization. In or around December 2020, several consultants associated with Matrix, including Mr. Pitts and Ms. Odom, left the company and formed or joined Canopy Partners. Faulk, Alabama political crisis management company Matrix sues former employees; Archibald, Archibald: Unveiling political dark arts in Alabama and Florida is critical to the republic. Matrix and Dr. Perkins sued those former consultants and

28

Canopy Partners. *See* Complaint, *Matrix, LLC v. Canopy Partners LLC, et al.*, 01-CV-2021-902121.00 (Jeff. Cnty. Ala. Cir. Ct.), *available at* https://bit.ly/3v3XNKa; Complaint, *Canopy Partners, LLC and Jeff Pitts v. Joseph Perkins*, 2021-CA-004783 (Fla. Cir. Ct., 4th Jud. Cir., Duval Cnty.), *available at* https://bit.ly/3v3XNKa. In the context of Matrix's lawsuit, that firm's lawyer alleged that the former consultants "conducted secret, off-the-books communications campaigns that were not authorized by Matrix or Dr. Perkins." Letter from Carson M. Kirby to Daniel Tait, Energy and Policy Institute (Jan. 14, 2022), https://bit.ly/3MWXPtt. The lawyer further asserted that Dr. Perkins and Matrix employees did not have "any direct or indirect involvement in any of the Florida ghost candidate campaigns," and to the extent that Mr. Pitts or others were involved in them, "their involvement was without Matrix's knowledge or consent and contrary to Matrix policy." *Id.* Canopy Partners and Mr. Pitts denied the allegations and countersued Dr. Perkins, accusing him of extortion. Complaint, *Canopy Partners, LLC and Jeff Pitts v. Joseph Perkins*, 2021-CA-004783 (Fla. Cir. Ct., 4th Jud. Cir., Duval Cnty.); Garcia and Martin, Florida's dark money playbook. The parties agreed to dismiss both cases in August 2022, ending the litigation. Jeff Weiner, Political operatives whose feud spilled dark money secrets agree to settle suit, *Orlando Sentinel*, Aug. 31, 2022, https://bit.ly/3g6hBa4; Jeff Poor, Matrix-Canopy Partners legal dispute ends in an apparent truce, *1819 News*, Sept. 1, 2022, https://bit.ly/3VwSrlh.

Count I

56.    The FECA and FEC regulations prohibit knowingly permitting one's name to be used to effect a contribution in the name of another person. 52 U.S.C. § 30122; 11 C.F.R. § 110.4(b).

29

57.     There is reason to believe that Grow United, the Center for Advancement of Integrity and Justice, Florida Promise, Broken Promises, and Stand Up for Justice, by and through Mr. Alexander and Mr. Anderson, violated this law by allowing their names to be used to effect one or more contributions to super PACs by Unknown Respondents who are the true source of the contributions. The funding structure developed by the Conduit Consultants, who seemingly controlled these conduits, had an explicit goal of making political contributions while evading public disclosure, suggesting that the violations were both knowing and willful.

58.     A "reason to believe" exists where a complaint "credibly alleges" a violation of the FECA "may have occurred." Federal Election Commission, Statement of Policy Regarding Commission Action in Matters at the Initial Stage in the Enforcement Process, 72 Fed. Reg. 12545, Mar. 16, 2007. "Reason to believe" is a threshold standard under federal law that does not establish by itself that a violation has occurred. The Commission has stated that it "will find 'reason to believe' in cases where the available evidence in the matter is at least sufficient to warrant conducting an investigation, and where the seriousness of the alleged violation warrants either further investigation or immediate conciliation." *Id*.

59.     As detailed above, each of the nonprofits appear to be controlled by the Conduit Consultants who pitched clients on a scheme to evade public reporting on corporate funds used for political contributions by routing the contributions through conduits. A legal memo on "federal elections support" provided by the consultants to one of their clients further suggested that because of concerns about disclosure, "it could be strategic for a [nonprofit] who wishes to make Independent Expenditures to do so via a Super PAC."

60.     There is reason to believe that Grow United, one of the nonprofits controlled by the Conduit Consultants which participated in state-level conduit contribution schemes, and Mr. Alexander participated in the federal conduit scheme when, on October 27, 2020, Grow United transferred $100,000 to Wingman PAC and permitted its name be used in the place of the Unknown Respondents who were the true source of the contribution.

61.     Accordingly, there is reason to believe Grow United, by and through Mr. Alexander, knowingly permitted its name to be used to effect a contribution in the name of another, in violation of 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b). If these violations were knowing and willful, they are also subject to criminal penalties and referral to the Department of Justice. 52 U.S.C. §§ 30109(a)(5)(C), (d)(1).

62.     There is reason to believe that the Center for Advancement of Integrity and Justice, one of the nonprofits seemingly controlled by the Conduit Consultants, and Mr. Alexander similarly participated in the conduit scheme when, on October 27, 2020, the Center for Advancement of Integrity and Justice transferred $100,000 to American Valor PAC and permitted its name to be used in the place of the Unknown Respondents who were the true source of the money.

63.     Accordingly, there is reason to believe the Center for Advancement of Integrity and Justice, by and through Mr. Alexander, knowingly permitted its name to be used to effect a contribution in the name of another, in violation of 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b). If these violations were knowing and willful, they are also subject to criminal penalties and referral to the Department of Justice. 52 U.S.C. §§ 30109(a)(5)(C), (d)(1).

64.     There is reason to believe Florida Promise, one of the nonprofits seemingly controlled by the Conduit Consultants and which appeared on the Pitts Memo, and Mr. Alexander similarly participated in the conduit scheme when, on December 8, 2020, Florida Promise transferred $1 million to the Senate Leadership Fund and permitted its name be used in the place of the Unknown Respondents who were the true source of the contribution.

65.     Accordingly, there is reason to believe Florida Promise, by and through Mr. Alexander, knowingly permitted its name to be used to effect a contribution in the name of another, in violation of 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b). If these violations were knowing and willful, they are also subject to criminal penalties and referral to the Department of Justice. 52 U.S.C. §§ 30109(a)(5)(C), (d)(1).

66.     There is reason to believe Broken Promises, one of the nonprofits seemingly controlled by the Conduit Consultants and which appeared on the Pitts Memo, and Mr. Anderson similarly participated in the conduit scheme when, on July 14, 2020, Broken Promises transferred $20,000 to Concerned Conservatives, Inc. and permitted its name be used in the place of the Unknown Respondents who were the true source of the contribution.

67.     Accordingly, there is reason to believe Broken Promises, by and through Mr. Anderson, knowingly permitted its name to be used to effect a contribution in the name of another, in violation of 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b). If these violations were knowing and willful, they are also subject to criminal penalties and referral to the Department of Justice. 52 U.S.C. §§ 30109(a)(5)(C), (d)(1).

68.     There is reason to believe Stand Up for Justice, one of the nonprofits seemingly controlled by the Conduit Consultants, and Mr. Anderson similarly participated in the conduit

scheme when, on March 31, 2020, Stand Up for Justice transferred $50,000 to South Florida Residents First and permitted its name be used in the place of the Unknown Respondents who were the true source of the contribution.

69.     Accordingly, there is reason to believe Stand Up for Justice, by and through Mr. Anderson, knowingly permitted its name to be used to effect a contribution in the name of another, in violation of 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b). If these violations were knowing and willful, they are also subject to criminal penalties and referral to the Department of Justice. 52 U.S.C. §§ 30109(a)(5)(C), (d)(1).

<u>Count II</u>

70.     The FECA and FEC regulations prohibit knowingly accepting a contribution made by one person in the name of another. 52 U.S.C. § 30122; 11 C.F.R. § 110.4(b). The FECA and FEC regulations further require political committees to report the identity of the true source of contributions, as well as anyone who acted as a conduit for a contribution. 52 U.S.C. § 30104(b)(2); 11 C.F.R. § 104.3(a), (j) (political committees must report "earmarked contributions"); *see also Instructions for FEC Form 3X and related Schedules* at 11 (revised May 2016), https://bit.ly/2F19VxP (any political committee receiving an earmarked contribution through conduit entities must "report each conduit through which the earmarked contribution passed, including the name and address of the conduit, and whether the contribution was passed on in cash, by the contributor's check, or by the conduit's check"); 52 U.S.C. § 30107(a)(8) (FEC forms have force of law).

71.     There is reason to believe Wingman PAC, American Valor PAC, Senate Leadership Fund, Concerned Conservatives, Inc., and South Florida Residents First, independent

33

expenditure-only political committees established under the FECA, each violated the prohibition on knowingly accepting a contribution made by one person in the name of another and violated their obligations to report the identity of the true source or sources of contributions and anyone who acted as a conduit for a contribution.

72.     As detailed above, each of the super PACs received contributions from nonprofits apparently controlled by the Conduit Consultants who pitched clients on a scheme to minimize the public reporting on corporate funds used for political contributions by routing the contributions through conduits. A legal memo on "federal elections support" provided by the consultants to one of their clients further suggested that because of concerns about disclosure, "it could be strategic for a [nonprofit] who wishes to make Independent Expenditures to do so via a Super PAC."

73.     There is reason to believe Wingman PAC participated in the conduit scheme when, on October 27, 2020, the super PAC knowingly accepted a $100,000 contribution from Unknown Respondents in the name of a conduit entity, Grow United, a section 501(c)(4) organization that is not required to disclose its donors. The contribution was also the single largest contribution the super PAC received during the 2020 election.

74.     Accordingly, there is reason to believe Wingman PAC by and through its treasurer, Abby Dupree, knowingly accepted a contribution made by one person in the name of another in violation of 5 U.S.C. § 30122 and 11 C.F.R. § 110.4(b). If Wingman PAC and Ms. Dupree's violations were knowing and willful, they also are subject to criminal penalties and referral to the Department of Justice. 52 U.S.C. §§ 30109(a)(5)(C), (d)(1).

75.     Further, there is reason to believe that Wingman PAC, by and through its

treasurer, Ms. Dupree, also failed to report the identities of the true source or sources of contributions and the identities of each conduit for the contributions falsely attributed to Grow United, violating 52 U.S.C. § 30104(b)(2) and 11 C.F.R. § 104.3(a) and (j). If Wingman PAC and Ms. Dupree's violations were knowing and willful, they also are subject to criminal penalties and referral to the Department of Justice. 52 U.S.C. §§ 30109(a)(5)(C), (d)(1).

76.    There is reason to believe American Valor PAC participated in the conduit scheme when, on October 27, 2020, the super PAC knowingly accepted a $100,000 contribution from Unknown Respondents in the name of the conduit entity, Center for Advancement of Integrity and Justice, a section 501(c)(4) organization that is not required to disclose its donors. The contribution was also the single largest contribution the super PAC received during the 2020 election.

77.    Accordingly, there is reason to believe American Valor PAC by and through its treasurer, Lisa Lisker, knowingly accepted a contribution made by one person in the name of another in violation of 5 U.S.C. § 30122 and 11 C.F.R. § 110.4(b). If American Valor PAC and Ms. Lisker's violations were knowing and willful, they also are subject to criminal penalties and referral to the Department of Justice. 52 U.S.C. §§ 30109(a)(5)(C), (d)(1).

78.    Further, there is reason to believe American Valor PAC, by and through its treasurer, Ms. Lisker, also failed to report the identities of the true source or sources of contributions and the identities of each conduit for the contributions falsely attributed to the Center for Advancement of Integrity and Justice, violating 52 U.S.C. § 30104(b)(2) and 11 C.F.R. § 104.3(a) and (j). If American Valor PAC and Ms. Lisker's violations were knowing and willful, they also are subject to criminal penalties and referral to the Department of Justice. 52

U.S.C. §§ 30109(a)(5)(C), (d)(1).

79.     There is reason to believe the Senate Leadership Fund participated in the conduit scheme when, on December 8, 2020, the super PAC knowingly accepted a $1 million contribution from Unknown Respondents in the name of the conduit entity, Florida Promise, a section 501(c)(4) organization that is not required to disclose its donors.

80.     Accordingly, there is reason to believe the Senate Leadership Fund by and through its treasurer, Caleb Crosby, knowingly accepted a contribution made by one person in the name of another in violation of 5 U.S.C. § 30122 and 11 C.F.R. § 110.4(b). If the Senate Leadership Fund and Mr. Crosby's violations were knowing and willful, they also are subject to criminal penalties and referral to the Department of Justice. 52 U.S.C. §§ 30109(a)(5)(C), (d)(1).

81.     Further, there is reason to believe the Senate Leadership Fund, by and through its treasurer, Mr. Crosby, also failed to report the identities of the true source or source of contributions and the identities of each conduit for the contributions falsely attributed to Florida Promise, violating 52 U.S.C. § 30104(b)(2) and 11 C.F.R. § 104.3(a) and (j). If the Senate Leadership Fund and Mr. Crosby's violations were knowing and willful, they also are subject to criminal penalties and referral to the Department of Justice. 52 U.S.C. §§ 30109(a)(5)(C), (d)(1).

82.     There is reason to believe Concerned Conservatives, Inc. participated in the conduit scheme when, on July 14, 2020, the super PAC knowingly accepted a $20,000 contribution from Unknown Respondents in the name of the conduit entity, Broken Promises, a section 501(c)(4) organization that is not required to disclose its donors. The contribution was also the fourth largest contribution the super PAC received during the 2020 election.

83.     Accordingly, there is reason to believe Concerned Conservatives, Inc., by and

through its treasurer, Nancy H. Watkins, knowingly accepted a contribution made by one person

in the name of another in violation of 5 U.S.C. § 30122 and 11 C.F.R. § 110.4(b). If Concerned

Conservatives, Inc. and Ms. Watkins's violations were knowing and willful, they also are subject

to criminal penalties and referral to the Department of Justice. 52 U.S.C. §§ 30109(a)(5)(C),

(d)(1).

84.     Further, there is reason to believe Concerned Conservatives, Inc., by and through

its treasurer, Ms. Watkins, also failed to report the identities of the true source or sources of

contributions and the identities of each conduit for the contributions falsely attributed to Broken

Promises, violating 52 U.S.C. § 30104(b)(2) and 11 C.F.R. § 104.3(a) and (j). If Concerned

Conservatives, Inc. and Ms. Watkins's violations were knowing and willful, they also are subject

to criminal penalties and referral to the Department of Justice. 52 U.S.C. §§ 30109(a)(5)(C),

(d)(1).

85.     There is reason to believe South Florida Residents First participated in the conduit

scheme when, on March 31, 2020, the super PAC knowingly accepted a $50,000 contribution

from Unknown Respondents in the name of the conduit entity, Stand Up for Justice, a section

501(c)(4) organization that is not required to disclose its donors. The contribution was tied for

the largest contribution the super PAC received during the 2020 election.

86.     Accordingly, there is reason to believe South Florida Residents First, by and

through its treasurer, Paul Kilgore, knowingly accepted a contribution made by one person in the

name of another in violation of 5 U.S.C. § 30122 and 11 C.F.R. § 110.4(b). If South Florida

Residents First and Mr. Kilgore's violations were knowing and willful, they also are subject to

criminal penalties and referral to the Department of Justice. 52 U.S.C. §§ 30109(a)(5)(C), (d)(1).

87.     Further, there is reason to believe South Florida Residents First, by and through

its treasurer, Mr. Kilgore, also failed to report the identities of the true source or sources of

contributions and the identities of each conduit for the contributions falsely attributed to Stand

Up for Justice, violating 52 U.S.C. § 30104(b)(2) and 11 C.F.R. § 104.3(a) and (j). If South

Florida Residents First and Mr. Kilgore's violations were knowing and willful, they also are

subject to criminal penalties and referral to the Department of Justice. 52 U.S.C.

§§ 30109(a)(5)(C), (d)(1).

<u>Count III</u>

88.     The FECA and FEC regulations further prohibit making a contribution in the

name of another person. 52 U.S.C. § 30122; 11 C.F.R. § 110.4(b).

89.     There is reason to believe Unknown Respondents made a contribution or

contributions to Wingman PAC using Grow United as a conduit, which contribution or

contributions were falsely identified as originating from Grow United. By making one or more

contributions to Wingman PAC in the name of Grow United, Unknown Respondents violated 52

U.S.C. § 30122 and 11 C.F.R. § 110.4(b). If Unknown Respondents' violations were knowing

and willful, they also are subject to criminal penalties and referral to the Department of Justice.

52 U.S.C. §§ 30109(a)(5)(C), (d)(1).

90.     There is reason to believe Unknown Respondents made a contribution or

contributions to American Valor PAC using the Center for Advancement of Integrity and Justice

as a conduit, which contribution or contributions were falsely identified as originating from the

Center for Advancement of Integrity and Justice. By making one or more contributions to

American Valor PAC in the name of the Center for Advancement of Integrity and Justice,

Unknown Respondents violated 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b). If Unknown Respondents' violations were knowing and willful, they also are subject to criminal penalties and referral to the Department of Justice. 52 U.S.C. §§ 30109(a)(5)(C), (d)(1).

91.     There is reason to believe Unknown Respondents made a contribution or contributions to the Senate Leadership Fund using Florida Promise as a conduit, which contribution or contributions were falsely identified as originating from Florida Promise.  By making one or more contributions to the Senate Leadership Fund in the name of Florida Promise, Unknown Respondents violated 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b). If Unknown Respondents' violations were knowing and willful, they also are subject to criminal penalties and referral to the Department of Justice. 52 U.S.C. §§ 30109(a)(5)(C), (d)(1).

92.     There is reason to believe Unknown Respondents made a contribution or contributions to Concerned Conservatives, Inc. using Broken Promises as a conduit, which contribution or contributions were falsely identified as originating from Broken Promises. By making one or more contributions to Concerned Conservatives, Inc. in the name of Broken Promises, Unknown Respondents violated 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b). If Unknown Respondents' violations were knowing and willful, they also are subject to criminal penalties and referral to the Department of Justice. 52 U.S.C. §§ 30109(a)(5)(C), (d)(1).

93.     There is reason to believe Unknown Respondents made a contribution or contributions to South Florida Residents First using Stand Up for Justice as a conduit, which contribution or contributions were falsely identified as originating from Stand Up for Justice. By making one or more contributions to South Florida Residents First in the name of Stand Up for Justice, Unknown Respondents violated 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b). If

Unknown Respondents' violations were knowing and willful, they also are subject to criminal penalties and referral to the Department of Justice. 52 U.S.C. §§ 30109(a)(5)(C), (d)(1).

Conclusion

94.     WHEREFORE, Citizens for Responsibility and Ethics in Washington requests that the FEC conduct an investigation into these allegations; declare the respondents to have violated the FECA and applicable FEC regulations; and order respondents to correct these violations by filing reports identifying the true source or sources of and any conduits for any contributions to Wingman PAC, the true source or sources of and any conduits for any transfers to American Valor PAC, the true source or sources of and any conduits for any transfers to the Senate Leadership Fund, the true source or sources of and any conduits for any transfers to Concerned Conservatives, Inc., and the true source or sources of and any conduits for any transfers to South Florida Residents First. In addition, the complainants request that the FEC impose sanctions appropriate to these violations, and take such further action as may be appropriate, including referring this matter to the Department of Justice for criminal prosecution.

ON BEHALF OF COMPLAINANT
Noah Bookbinder
President
Citizens for Responsibility and Ethics
 in Washington
1331 F St NW, Suite 900
Washington, D.C. 20004
(202) 408-5565 (phone)
(202) 588-5020 (fax)

Verification

Citizens for Responsibility and Ethics in Washington hereby verifies that the statements made in the attached Complaint are, upon information and belief, true. Sworn pursuant to 18 U.S.C. § 1001.


_____
Noah Bookbinder


Sworn to and subscribed before me this 26TH day of October 2022

_____
Notary Public

41