**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| MAHA JASTRAM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NEXTERA ENERGY, INC., FLORIDA POWER & LIGHT COMPANY, JAMES ROBO, ERIC SILAGY and DAVID P. REUTER,<br><br>Defendants. | Case No. 23-CIV-80833-CANNON<br><br>CLASS ACTION |

**LEAD PLAINTIFF'S OPPOSITION**
**TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE**

Defendants' proposed twenty-seventh piece of extrinsic evidence in support of their motion to dismiss is a self-issued, post-class period press release, dated March 12, 2024 ("Press Release"). The facts contained in the Press Release are not properly subject to judicial notice. Even if the Press Release could be considered for the truth of its assertions, it is irrelevant to the question before the Court and the substance of the action.

A court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). In a civil action for securities fraud, a court may take judicial notice of relevant public documents "required to be filed with the SEC, and actually filed," but solely "for the purpose of determining what statements the documents contain and not to prove the truth of the documents' contents." *Kadel v. Flood*, 427 Fed. Appx. 778, 780 n.1 (11th Cir. 2011) (quoting *Bryant v. Avado*

1

*Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999)). By contrast, judicial notice of a company's ordinary press releases not referenced or incorporated in the underlying complaint is disfavored. *See Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir. 1991) (finding that press releases are not subject to judicial notice and that the rationale for taking judicial notice of SEC filings did not apply "to other forms of disclosure such as press releases or announcements at shareholder meetings."); *see also United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 457 (E.D.N.Y. 2007) (denying judicial notice of press release not referenced in complaint).

In the Eleventh Circuit, to the extent any consideration is given to press releases at all, the Court may not consider the truth of the document's assertions. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1277–78 (11th Cir. 1999)) (holding SEC filings and similar "documents may only be considered to show their contents, not to prove the truth of matters asserted therein."); *see also In re Flowers Foods, Inc. Sec. Litig.*, 2018 WL 1558558, at *4-5 (M.D. Ga. Mar. 23, 2018) (denying motion to dismiss, but granting judicial notice of Defendant's SEC filings). Defendants' own authority emphasizes that the poorly veiled effort to urge consideration the Press Release for the truth of the matters asserted therein is improper. *See Patagonia, Inc. v. Worn Out, LLC*, No. 22-CV-23858, 2023 WL 3172530, at *6 (S.D. Fla. May 1, 2023) (taking judicial notice of press releases "for the limited purpose of noting the existence of the press release's message. . . . The Court does not accept these statements as true, but merely notes that they exist.") (internal quotations omitted); *First Glob. Corp. v. Mansiana Ocean Residences, LLC*, No. 09-21092-CIV, 2010 WL 2163756, at *3 n.3 (S.D. Fla. May 27, 2010) ("I am *not* taking judicial notice that Mansiana intended to include 135 residential units in the Solis Project. I am taking judicial notice that press releases were issued which indicated that the Solis Project consisted of 135 residential units."). Courts across the

country take the same approach. *See, e.g.*, *In re American Apparel, Inc. S'holder Litig.*, No. CV 10–06352 MMM (JCGx), 2013 WL 174119 (C.D. Cal. Jan. 16, 2013) (denying, in part, motion to dismiss, and taking judicial notice of the existence of press releases and their contents, but not of the truth of the matters asserted therein).

Here, the content and existence of the Press Release is irrelevant to the question before the Court—whether the Second Amended Complaint ("SAC") sufficiently alleges that Defendants misled investors who purchased NEE securities between December 2, 2021, and January 30, 2023. Indeed, even if considered for its truth, the Press Release does nothing to rebut the substance of the SAC's allegations. The October 2022 complaint filed by Citizens for Responsibility and Ethics in Washington ("CREW") with the Federal Election Commission ("FEC") against Grow United and Matrix-controlled operatives and organizations alleged to have illegally concealed the identity of the true sources of funding behind the ghost-candidate scheme did not even name FPL or NEE as respondents. SAC, ECF No. 68 ¶¶200-212.[1]

The Court would need to speculate as to the reasons why the FEC chose not to act on the CREW complaint to support the subtle inference Defendants are seeking. The SAC's central argument is that Defendants made false and misleading statements claiming there was "no basis" to allegations that their involvement with Matrix exposed them to legal and reputational risk, while possessing hundreds of pages of detailed documents contradicting those claims. The Press Release has no bearing on that question, in large part because whether or not the FEC would ultimately take action is irrelevant to whether the broader risk that Defendants claimed did not exist was real and caused investor losses.

---

[1] FPL later acknowledged that it was the "unknown respondent" described in CREW's complaint. *See* SAC ¶269.

Indeed, NEE's risk disclosure included in its January 25, 2023, 8-K explicitly acknowledged the possibility of a "material adverse impact on the reputation of NEE or FPL or on the effectiveness of their interactions with governmental regulators or other authorities" separate and apart from any action that the FEC might take. SAC ¶269. This new risk disclosure contributed to a precipitous drop in NEE's share price, *id.* at ¶¶288-96.

**CONCLUSION**

Defendants' request for judicial notice of the Press Release should be denied, or judicial notice of the Press Release should be limited to its existence, not to the truth or significance of the matters asserted therein, or to draw inferences in Defendants' favor.

April 1, 2024

Respectfully submitted,

/s/ Chris Gold
Chris Gold
Florida Bar No. 088733
chris@edelsberglaw.com
**EDELSBERG LAW, P.A.**
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
(786) 673-2405 phone

Scott Edelsberg
Florida Bar No. 0108039
scott@edelsberglaw.com
**EDELSBERG LAW, P.A.**
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
(305) 975-3320 phone

*Liaison Counsel for Lead Plaintiff Florida Retirement Funds and Liaison Counsel for the Class*

**BLOCK & LEVITON LLP**
Jeffrey C. Block (*pro hac vice*)
Jacob Walker (*pro hac vice*)
Brendan Jarboe (*pro hac vice*)
Mark Byrne (*pro hac vice*)
Nathan Abelman (*pro hac vice)*
260 Franklin Street, Suite 1860
Boston, MA 02110
jeff@blockleviton.com
jake@blockleviton.com
brendan@blockleviton.com
mark@blockleviton.com
nathan@blockleviton.com
(617) 398-5600 phone
(617) 507-6020 fax

*Counsel for Lead Plaintiff Florida Retirement Funds and Lead Counsel for the Class*

**KLAUSNER, KAUFMAN, JENSEN & LEVINSON, P.A.**
Robert D. Klausner
Florida Bar No. 244082

5

7080 Northwest 4th Street
Plantation, FL 33317
Telephone: (954) 916-1202
Facsimile: (954) 916-1232
bob@robertdklausner.com

*Additional Counsel for Lead Plaintiff Florida
Retirement Funds*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this on the 1st day of April, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ *Chris Gold*
Chris Gold