UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

MAHA JASTRAM, Individually and on
Behalf of All Others Similarly Situated,

    Plaintiff(s),                                 **CASE NO. 23-CIV-80833-CANNON**

    v.

NEXTERA ENERGY, INC., FLORIDA
POWER & LIGHT COMPANY, JAMES
ROBO, ERIC SILAGY, and DAVID P.
REUTER,

    Defendants.
_____/

### DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' DEMONSTRATIVE

Defendants respectfully request that the Court strike the Demonstrative submitted with Plaintiffs' Notice of Supplemental Filing. ECF No. 112-2 ("Dem."). At the conclusion of the hearing held on May 13, 2024, ECF No. 106, the Court stated that it would allow Plaintiffs to file an exhibit that, with limited advocacy, identified the specific paragraphs in the Second Amended Complaint (SAC) that Plaintiffs allege render each of the alleged misstatements contained therein false. The Court memorialized these directions in a written Order on May 20, 2024, which stated that "Plaintiffs may file, but are not required to file, a chart or list that specifically and clearly identifies, by paragraph number(s), the alleged false statements to the corresponding allegations in support of those false statements." ECF No. 107 at 2.

On May 20, 2024, three hours after the Court issued the aforementioned Order, Plaintiffs filed a one-page "Citation Guide," ECF No. 108-1, and a 22-slide "Demonstrative" containing

Plaintiffs' arguments on falsity, ***scienter***, and ***loss causation***, ECF No. 108-2.[1] Defendants take no issue with Plaintiffs' Citation Guide. Plaintiffs' Demonstrative, on the other hand, contains significant advocacy and constitutes an unauthorized sur-reply filed in violation of the Court's briefing schedule Order, ECF No. 75, 77, the Court's directive at the May 13, 2024 hearing, ECF No. 106, the Court's May 20, 2024 written Order, ECF No. 107, and the Local Rules for the United States District Court for the Southern District of Florida. *See* Local Rule 7.1(c) (after reply memoranda of law are filed, "[n]o further or additional memoranda of law shall be filed without prior leave of Court"). Plaintiffs' Demonstrative is particularly inappropriate where Plaintiffs had the opportunity to use demonstratives at the May 13 hearing, but expressly chose not to do so. In the days leading up to the hearing, Plaintiffs and Defendants agreed to a mutual exchange of demonstratives at 9 am ET on May 13, in advance of the hearing scheduled for 1:30pm. Ex. A at 2–3. That morning, Defendants shared their demonstrative presentation with Plaintiffs, and Plaintiffs informed Defendants that they were "not planning on using any demonstratives." *Id*. at 1. By preparing a lengthy, argumentative Demonstrative to which Defendants have no ability to reply, Plaintiffs have not only acted contrary to the Court's Orders, but have sought to "re-trade" their affirmative decision to not use any demonstratives at the May 13 hearing.[2]

Even if it were considered, the Demonstrative's sur-reply argument is replete with

---

[1] Due to an ECF filing error, on May 21, 2024, the Court ordered Plaintiffs to strike this filing and re-file within three days. ECF No. 110. Plaintiffs subsequently re-filed these same documents on May 21, 2024. *See* ECF No. 112-1 (Citation Guide); ECF No. 112-2 (Demonstrative).

[2] Prior to filing this Motion, Defendants met and conferred with Plaintiffs, who declined to withdraw their Demonstrative, asserting that it contained no more advocacy than Defendants' demonstrative used at the May 13 hearing. However, as noted, Defendants shared their demonstrative with Plaintiffs several hours before the May 13 hearing, such that Plaintiffs had every opportunity to address the demonstrative at the hearing. In contrast, Plaintiffs chose not to submit a demonstrative before the hearing, so Defendants were unable to address it at the hearing.

mischaracterizations of Plaintiffs' allegations that are not supported by the SAC or the documents on which the SAC relies. A few illustrative (but by no means exhaustive) examples include: (i) the Demonstrative claims that "Silagy directed Martell to make Sen. Rodriguez's life 'a living hell' and *within weeks* . . . Matrix proposed the funding structure to FPL," Dem. 9, but the SAC alleges that over *ten months* transpired between those unrelated allegations, ¶¶ 149, 160; (ii) the Demonstrative asserts that "Reuter disputed the veracity of text messages between Martell and a private investigator surveilling Nate Monroe and *without mention of whether Martell's cell phone records were checked*," Dem. 11, but the article containing Reuter's alleged misstatement also contains FPL's statement that, to the contrary, FPL "reviewed emails, cell phones and computer files" for the texts, and that "*Martell willingly provided his phone for that review*," Def. Ex. U at 3, 5; (iii) the Demonstrative asserts that "Matrix affiliate Metis Group *purchased* The Capitolist," Dem. 12, but the cited allegations say that Metis Group executed a purchase option agreement which gave it only a "*1% ownership stake*," ¶¶ 221–222; and (iv) regarding the "2018 Election Cycle," the Demonstrative asserts that a FPL employee texted Matrix "about who controlled Broken Promises," Dem. 3, but that cannot be—the SAC alleges that Broken Promises was created in 2018 and that the cited texts were from 2016 and not about Broken Promises, ¶¶ 103–104.[3]

While the Demonstrative also contains eight slides of argument on loss causation, Plaintiffs still fail to point to any disclosure on January 25 or 31, 2023 revealing *new facts* related to the eight alleged misstatements. *See MacPhee* v. *MiMedx Grp., Inc.*, 73 F.4th 1220, 1245 (11th Cir. 2023) (disclosures not corrective because they "did not correct any 'falsehood'" in prior statements). None of the Demonstrative's "new facts" are alleged to be both new and to correct

---

[3] All emphasis added. References to "¶ " are to the SAC, and references to "Def. Ex. __" are to exhibits in support of Defendants' Motion to Dismiss (ECF No. 83) ("Mot.") and Defendants' Reply in Support of the Motion to Dismiss (ECF No. 90) ("Reply").

any alleged misstatement.

For instance, while the Demonstrative asserts that NEE's November 3, 2022 risk disclosure did not, like the January 25, 2023 risk disclosure, expressly refer to the risk that the Matrix allegations could impact NEE's or FPL's reputation or interactions with government authorities, Dem. 19, any fair reading of the earlier disclosure's warning of the potential for government inquiries and violations leading to "fines, penalties, or other sanctions or impacts on NEE or FPL" would encompass those risks.  Def. Ex. F at 57.  Nor does it matter that the first disclosure was made during the investigation and second disclosure at its completion; Plaintiffs cite no authority for their assertion that reiterating to investors that, despite having completed an investigation, you still cannot predict the future, discloses a "new" and "corrective" fact.

Likewise, the Demonstrative cites analysts to suggest that (i) NextEra provided a "negative update" on its second investigation, Dem. 20, and (ii) that Silagy's retirement announcement disclosed new facts related to the alleged eight misstatements, Dem. 21.  But on January 25, 2023, NEE announced *positive* results from its investigation, Mot. 22 (and the cited analyst reports do not actually say otherwise, ¶¶ 291–295), and NEE disclosed the reasons for Silagy's retirement announcement, Mot. 7–8, and Plaintiffs do not plead facts to suggest those reasons were false.  In any event, analyst speculation does not render a disclosure corrective, Reply 14 & n.9, and Plaintiffs' reliance on such speculation alone distinguishes their authority, where new corrective facts *were* disclosed.  *See FindWhat Inv. Grp.* v. *FindWhat.com*, 658 F.3d 1282, 1313 (11th Cir. 2011) (along with CFO's resignation, company "finally revealed the truth about its heavy reliance on click fraud," which corrected its prior statements downplaying click-fraud and touting procedures to prevent it); *Luczak* v. *National Beverage Corp.*, 812 Fed. App'x 915, 922–23 (11th Cir. 2020) (disclosures corrected prior statements touting proprietary sales metrics by disclosing

that defendants had made conflicting statements about the metrics and had declined to give the SEC information on the metrics, revealing the metrics to be unreliable).

None of Plaintiffs' other purported "new" facts are corrective. While they emphasize (Dem. 21) that NEE did not previously disclose that Silagy had, a year prior to retirement, committed to NEE's CEO that he would stay for "at least a year," Def. Ex. L at 15, they do not argue that such prior disclosure was required, nor are there any well-pleaded facts suggesting that Silagy's commitment to stay for a limited time was fabricated. And although Plaintiffs claim that reporting "revealed" that Silagy's claw back was "unusual," Dem. 22, neither the *Times-Union* article nor the analyst report on which Plaintiffs rely says that—the analyst report simply refers to a *different* provision as "customary," Def. Ex. M at 3, and the article notes that it is "unclear if all the terms of Silagy's exit, including the claw back, are standard for FPL leaders," Def. Ex. N at 3. Nor are any of these "facts" related to the topics of the eight alleged misstatements.

At bottom, Plaintiffs' Demonstrative is improper and Defendants request that it be stricken. But even if considered, it cannot cure the SAC's pleading deficiencies, and Defendants respectfully request that the SAC be dismissed with prejudice.

## LOCAL RULE 7.1(A)(3) CERTIFICATION

I hereby certify that Defendants' counsel conferred with Plaintiffs' counsel in good faith regarding the relief sought in this motion. Plaintiffs' counsel indicated by email that Plaintiffs object to Defendants' requested relief.

Date: May 24, 2024.                          Respectfully submitted,

**Andy Hernandez**

Andy Hernández
Florida Bar No. 1018581

Jordi C. Martínez-Cid
Florida Bar No. 100566
Martínez-Cid Law
1 S.E. 3rd Avenue, Suite 2300
Miami, Florida 33131
Telephone: 305-704-9162
Email: jmartinez-cid@martinez-cidlaw.com
Email: ahernandez@martinez-cidlaw.com
Email: service@martinez-cidlaw.com

Daniel J. Kramer
New York Bar No. 1979392
(admitted *pro hac vice*)
Audra. J. Soloway
New York Bar No. 4113536
(admitted *pro hac vice*)
Joshua Hill, Jr.
New York Bar No. 4297826
(admitted *pro hac vice*)
David P. Friedman
New York Bar No. 5387774
(admitted *pro hac vice*)

**Paul, Weiss, Rifkind, Wharton & Garrison LLP**

1285 Avenue of the Americas
New York, New York 10019-6031
Telephone: 212-373-3000
Email: dkramer@paulweiss.com
Email: asoloway@paulweiss.com
Email: jhill@paulweiss.com
Email: dfriedman@paulweiss.com

*Counsel for NextEra Energy, Inc., Florida Power & Light Company, James Robo, Eric Silagy, and David P. Reuter*