**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 23-80833-CIV-CANNON**

**MAHA JASTRAM**, *individually and*
*on behalf of all others similarly situated*,

      Plaintiff,

v.

**NEXTERA ENERGY, INC.** *et al.*,

      Defendants.

_____/

**ORDER FOLLOWING HEARING ON MOTION FOR PRELIMINARY APPROVAL OF**
**CLASS ACTION SETTLEMENT; DENYING MOTION WITHOUT PREJUDICE;**
<u>**AND AUTHORIZING REFILING**</u>

**THIS CAUSE** comes before the Court following a hearing on Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement [ECF No. 127], held on July 30, 2026 [ECF No. 135]. The Court has reviewed the Motion, the Stipulation and supporting exhibits/declarations, and the subsequent clarification and revised proposed orders [ECF Nos. 127; 127-1 through 127-8; 131 through 133]. Upon full review, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement [ECF No. 127] is **DENIED WITHOUT PREJUDICE**.

2. Broadly speaking, the Motion is due to be denied as submitted because it does not contain sufficient information from which to determine whether the Court will likely be able to approve the proposal under the substantive requirements of Federal Rule of Civil Procedure 23(e). Fed. R. Civ. P. 23(e). That standard conditions approval of a binding class settlement on a court's determination that the proposal is "fair, reasonable, and adequate"

as informed by various subsidiary factors, including: (a) the initial prerequisites set forth in Rule 23(a) (numerosity of class, commonality of law/fact questions, typicality of claims/defenses, and degree to which representative parties will protect class interests); (b) the type-specific prerequisites corresponding to the class at issue (here, a Rule 23(b)(3) class), which mandates predominance of common questions and superiority of the class action method; and finally (c) the fairness factors in Rule 23(e)(2), including the adequacy of representation to the class by the representatives and class counsel, whether the proposal was negotiated at arm's length, and whether the relief provided for the class is adequate considering the costs/risks of trial, the effectiveness of the proposed method of relief distribution, the terms of any proposed award of attorney's fees, and the manner with which the proposal treats the class members relative to each other.  Fed. R. Civ. P. 23(e)(2).  This step-by-step inquiry is not an anemic or lax review as insinuated by the parties in the Motion, even in the pre-notice, "likely be able to approve" phase under Rule 23(e)(1)(B). Instead, the Court must conduct a substantive review of the terms of the proposal, including the proposed benefits to class members flowing from the settlement and the comparison of that projected benefit against the requested anticipated award of attorney's fees, in order to protect against potential collusion and otherwise ensure compliance with Rule 23(e)(2). To be sure, there is allowance in this preliminary process for some perhaps unavoidable quotient of ambiguity, and courts should stay attuned to the circumstances presented and eschew undue precision or exactitude.  Nevertheless, a plaintiff still bears the burden of making a sufficient showing, with reliable information, from which the Court can conduct the appropriate Rule 23 inquiry at the preliminary stage.  And the Court, for its part, still must engage in close review of the settlement-only certification proposal, giving due accord to tolerable variables in the context presented.

3. In this case, while the proposed settlement satisfies the Court as to some elements of the Rule 23(e) inquiry (e.g., adequacy of class representatives and method of processing class-member claims), much remains to be developed and established, particularly as relates to the size of the putative class (currently unknown), Plaintiff's damage theories/calculations as superficially addressed in the Motion, and the projected benefits to class members. For these reasons, along with various additional, miscellaneous deficiencies and/or areas for procedural improvement in the mechanics of the proposal, the Court rejects the Motion for Preliminary Approval as submitted and authorizes a renewed submission, consistent with this Order.

4. With these principles in mind, and without discounting the various explanations provided by counsel during the hearing, any amended motion to certify a settlement class under Rule 23(b)(3) must provide actual, reliable information—drawn from case-specific material, discovery, and/or expert analyses—regarding the size of the proposed class.[1]  As things currently stand, the Motion says the size of the class is "unknown" while simultaneously throwing out a figure of "at least 200,000" class members as estimated by the claims administrator in some unknown manner [ECF No. 127 p. 25; ECF No. 127-7 ¶ 9; ECF No. 127-8 ¶ 16]. Yet nothing in the Motion grounds that figure in the particular facts of the case or otherwise gives the Court any confidence that such numbers bear real association to the particular class to be certified here. The parties seem to have little trouble with these gaping holes, urging the Court essentially to grant preliminary approval now so we can worry about its adequacy and fairness later. The Court does not treat its obligations

---

[1] The class definition is not expressly specified in the operative complaint [ECF No. 68] but is listed in the stipulation accompanying the Motion as "all persons and entities who purchased or otherwise acquired NEE Securities, including purchasers of NEE call options and sellers of NEE put options, during the period from December 2, 2021, through February 1, 2023, inclusive (the 'Class Period'), and who were damaged thereby" [ECF No. 127-1 p. 7].

under Rule 23 in that manner, even accepting the pre-notice posture of the Motion.  Nor is the Court willing to minimize its review because, as Plaintiffs emphasize, this is the "largest settlement of a securities class action in the Southern District of Florida since the passage of the PSLRA in 1995" [ECF No. 127 p. 8; *see* ECF No. 127 ¶ 5].  In the end, whether through formal discovery (none of which appears to have been conducted to date), expert analysis, statistical/economic models, brokerage/transaction records, or other pertinent investigation rooted in the particulars of this case, the parties can, and should, do more before re-submitting any future request for preliminary approval.

5.  Equally important, if not more important, any renewed motion for preliminary approval also must significantly buttress and explain Plaintiffs' theory of damage in this case, with supporting information; the projected estimated recovery of putative class members; and the relationship between those projected sums and the requested $37.5 million in attorneys' fees anticipated to be sought in this case [ECF No. 127-3 pp. 5–6].[2]  As submitted, the Notice estimates a gross average recovery of approximately $0.28 per eligible share of common stock and then separately reports $3.29 in average damages per common share (as calculated by an unknown expert using unknown information) [ECF No. 127-3 pp. 5–6, 25].[3]  The Settlement also purports to cover owners of preferred stock (at $.01 per share

---

[2] Although nearly three calendar years elapsed between the filing of this action and the agreement in principle, the public docket reflects approximately two years of semi-active district court and appellate litigation, including briefing on a motion to dismiss, a motion hearing, and a successful appeal of the Court's order dismissing the Complaint.  The docket does not reflect any class or merits discovery before settlement [ECF No. 127 pp. 9–10, 18–19; ECF No. 127-1 ¶¶ A–Q], although the Court recognizes that the public docket may not reflect every confidential exchange or piece of investigatory work undertaken for settlement purposes.

[3] At the Hearing, Lead Plaintiffs' counsel characterized the per-share damage in this case (at least for common shares) at $8.70, representing the change in stock price after a disclosure by Defendant on January 25, 2023.  How that $8.70 in alleged price inflation correlates with the significantly lower per-share damage amount baked into the proposed notice is unclear and leaves even more questions about the source of Plaintiffs' damage theory in this case.

recovery), bonds (at $.03 per share recovery), and options (no information provided) [ECF No. 127-3], but the basis for those partial figures is left unexplained, with mostly superficial and circular references in the Motion and supporting papers.[4]  Separately, the Court makes no finding that the Settlement is collusive or that the anticipated 25% award of attorney's fees sought ($37.5 million, exclusive of costs and in addition to accrued interest [ECF No. 127-3 pp. 7, 19]) would be excessive.  But the Court cannot responsibly evaluate the relationship between the extremely significant proposed fee in this case and the actual or reasonably projected class benefit without more information.  More judicial scrutiny is warranted before preliminarily approving a settlement of this nature.

6.  In addition, to the extent Plaintiffs resubmit a motion for attorney's fees in connection with a future motion for final approval of a class action settlement, any such motion should be filed contemporaneously with a current, detailed itemization of attorney/paralegal time spent by Plaintiffs on this case (without block billing and with supporting declarations as necessary).  The Court understands that common fund fees remain governed by the percentage-of-the-fund method in the Eleventh Circuit, with 25% treated as a rough benchmark of presumptive reasonableness.  *See Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774–75 (11th Cir. 1991); *In re Blue Cross Blue Shield Antitrust Litig.*, 85 F.4th 1070, 1100 (11th Cir. 2023).  But the Court nevertheless is permitted to request itemized fee declarations/information as a lodestar cross-check and deems that added layer of evaluation warranted here.

7.  Finally, the Court notes various additional, miscellaneous items and observations with the proposed settlement, to be considered and evaluated upon any renewed submission:

---

[4] The ambiguity behind these figures appears to be even more pronounced in the case of the bond market as compared to the equity market.  Nor does the Court have any idea how Plaintiffs' damage theory applies to putative class members who purchased or sold NEE options.

a. The current settlement contemplates a proposed payment of up to $15,000 to Lead Plaintiffs [ECF No. 127-1 ¶ 8.1] under 15 U.S.C. § 78u-4(a)(4).  The parties shall ensure that any such request comports with the prohibition on incentive awards as described in *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1259–60 (11th Cir. 2020).

b. The proposed settlement contemplates a *cy pres* award for the proposed residual distribution to the Investor Rights Clinic of the University of Miami School of Law [ECF No. 127-1 ¶ 7.8].  Any amended motion shall provide additional information concerning that contemplated award in accordance with any applicable authorities.

c. The current notice plan contemplates notice via mail *or* e-mail [ECF No. 133-1 p. 4], with Lead Plaintiffs' Counsel indicating a preference for e-mail only to save on mailing costs.  Any renewed motion must provide for notice via both means, if available after reasonable due diligence, to enhance the degree of notice to putative class members.

d. The current proposed schedule appears to afford putative class members only 14 days after the filing of final approval papers to prepare and submit objections and/or exclusions to the proposed settlement [ECF No. 131].  Any renewed motion must afford class members at least 90 days to review the final approval papers and file any requests for exclusions and objections.

e. The proposed process for submitting objections contemplates class members submitting objections to the Clerk of the Court for filing [ECF No. 133-1 p. 9].  Any renewed motion must reformulate that process to require the claims administrator, with appropriate supervisory review by counsel, to receive all objections and then to transmit such objections to counsel for filing on the docket in a consolidated, organized submission for Court review.

    f.  The proposed preliminary order, if refiled, must also retain judicial discretion to consider untimely objection(s) to the Settlement, the Plan of Allocation, or the fee- and expense application [*see* ECF No. 133-1 ¶¶ 14, 16; ECF No. 127-3 pp. 20–21].

    g.  The proposed order could be read to permit parties to unilaterally vacate court orders [ECF No. 127-1 ¶ 9.5; ECF No. 127-2 ¶ 21]. Any renewed submission must clarify that no judgment or order of the Court may be vacated, nullified, or rendered ineffective absent a proper motion and judicial approval.

8. The Court expresses no final opinion on the merits of any renewed submission in this case. This Order rests on the present record and the Court's inability, without substantial additional information, to exercise its duty of pre-notice review under Rule 23(e).

9. The parties are free to engage in discovery practice and may submit a joint scheduling report for discovery purposes.

    **ORDERED** in Chambers at Fort Pierce, Florida, this 7th day of August 2026.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record